24 P.3d 50

**Kyle HOWELL, Plaintiff–Respondent,**

**v.**

**EASTERN IDAHO RAILROAD, INC., a corporation, Defendant–Appellant.**

**No. 25867.**

Supreme Court of Idaho, Twin Falls, March 2001 Term.

May 8, 2001.

**736**

Berman, Gaufin, Tomsic, Savage & Campbell, Salt Lake City, UT; Ingram Law Office, Burley, for appellant. Casey K. McGarvey argued.

The Crow Law Firm, Sacramento, CA; Robert O. Eldredge, Pocatello, for respondent. Donald S. Britt argued.

EISMANN, Justice.

Eastern Idaho Railroad, Inc., appeals from a judgment entered against it under the Federal Employers' Liability Act, 45 U.S.C. §§ 51 *et seq.* We affirm the judgment.

## I.

### FACTS AND PROCEDURAL HISTORY

On January 26, 1996, Kyle Howell was injured while employed by the Eastern Idaho Railroad, Inc. (Railroad). He was part of a three-man crew whose job it was to pick up full railroad cars from industrial customers and deliver empty cars to them. At the time of the accident, they were going to pick up a railroad car located on a siding called the Snake Lead. The engineer and another trainman were in one of two locomotives that were pushing two empty cars down a siding called the Snake Lead. Howell was riding on a ladder on the right side of the lead railroad car. It had previously snowed, and the snow on the track caused the lead railroad car to derail. When the car derailed, it moved to the right towards a building located next to the track, crushing Howell between the railroad car and the building. Had the car not derailed, Howell would not have been injured.

■ Howell sued the Railroad under the Federal Employers' Liability Act, 45 U.S.C. §§ 51 *et seq.* (FELA). Under the FELA, railroad workers can sue their employers for personal injuries suffered at the hands of the employers or fellow employees. Liability is founded upon common law concepts of negligence and injury, although Congress has abrogated the common law defenses of contributory negligence and assumption of risk. *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Although contributory negligence does not bar recovery, any damages awarded to the worker are reduced in proportion to the amount of his or her negligence. 45 U.S.C. § 53.

This case was tried to a jury, who found that both Howell and the Railroad were negligent, that Howell's injuries were caused 20% by his negligence and 80% by the Railroad's negligence, and that Howell's damages totaled $900,000. Judgment was entered in favor of Howell in the sum of $720,000, and the Railroad appealed.

## II.

### ISSUES ON APPEAL

A. Did the trial court err in refusing to grant the Railroad a judgment notwithstanding the verdict?

B. Did the trial court err in its evidentiary rulings?

C. Did the trial court properly instruct the jury?

## III.

### ANALYSIS

**A. Did the trial court err in refusing to grant the Railroad a judgment notwithstanding the verdict?**

The Railroad timely moved for a judgment notwithstanding the verdict, alleging that

737

Howell's injuries were caused solely by his own negligence. The Railroad argued that because Howell knowingly violated a company rule when he rode on the building side of the railroad car, his injuries were caused entirely by his own negligence. Had he obeyed the rule and ridden on the other side of the railroad car, the Railroad alleged that Howell would not have been injured when the railroad car derailed.

Under FELA, there can be more than one cause of an employee's injury. *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). The statute expressly imposes liability upon the employer to pay damages for injury or death due "in whole or in part" to its negligence. *Id.* Once it is shown that employer negligence played any part, even the slightest, in producing the injury, a jury verdict for the employee may not be overturned on the basis of his own negligence, no matter how substantial it may have been, although the jury may, of course, take the employee's contributory negligence into account in arriving at their verdict. *Dennis v. The Denver & Rio Grande Western Railroad Co.*, 375 U.S. 208, 84 S.Ct. 291, 11 L.Ed.2d 256 (1963). Where there is an evidentiary basis for the jury's verdict, it is free to disregard or disbelieve whatever facts are inconsistent with its verdict. *Id.*

In reviewing a trial court's decision to deny a motion for judgment notwithstanding the verdict, this Court applies the same standard as that applied by the trial court when it originally heard the motion. *Leavitt v. Swain*, 133 Idaho 624, 991 P.2d 349 (1999). When deciding a motion for judgment *n.o.v.*, a court cannot reweigh the evidence or consider the credibility of witnesses. *Id.* The moving party must admit the truth of all the adverse evidence, and all inferences must be drawn in favor of the non-moving party. *Id.* The court must simply determine whether there is substantial evidence to support the jury's verdict. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *J.R. Simplot Company v. Enviro Clear Company, Inc.*, 132 Idaho 251, 970 P.2d 980 (1999).

Evidence was introduced that the Railroad had a policy that required a railroad track to be cleared of snow before pushing unloaded cars down the track due to the risk that snow on the rails can cause the cars to derail. The track was usually cleared of snow by running a locomotive down it. Because a locomotive is several times heavier than an empty railroad car, it is much less likely to be derailed by the buildup of snow or ice on the track. A locomotive is also required to have a snowplow or a plate across the front of the wheels on its lead end to push snow off the track. Before pushing the two empty cars down the Snake Lead, the engineer and the person in the cab with him discussed whether they should first run the locomotives down the track in order to clear the snow. The engineer suggested that they do so, but the other person objected because it was late in the day and it would take too long to disconnect the empty cars so that they could run the locomotives down the track. The engineer therefore decided to proceed down the track without first clearing it to reduce the risk of derailment. When he began moving onto the siding, the engineer could see that Howell was riding on the building side of the lead car.

There was also evidence that the Railroad had failed to provide adequate training to those operating the train on the day of the accident. Howell and the engineer both testified that they did not think the snow could derail a railroad car if they were traveling at a slow speed. The engineer stated that he thought that at a slow speed he could stop before anything happened. Howell also stated that he did not think there was enough snow on the tracks to cause a derailment.

Howell testified that he chose to ride on the building side of the railroad car because he had been taught to stay on the same side of the train as the engineer so that they could be in visual contact. At the time of the accident, the engineer had chosen to sit on the right (the fireman's) side of the engine. Howell therefore climbed onto the right side of the railroad car, even though it was the side next to the building. Although Howell had a radio with which to communicate with

the engineer, there was expert testimony that it was the best and safest procedure for a trainman to ride on the same side as the engineer was sitting because the radio batteries go dead. Howell testified that the battery in his radio would not last an entire 12–hour day if they were busy.

There was also testimony that the rule against riding on the building side of railroad cars was not enforced by the Railroad. Another employee, who had been working for the Railroad for approximately two years prior to the accident, testified that when he was a conductor it was common practice to ride on the building side of the railroad car when working the Snake Lead. The engineer also testified that the Trainmaster for the Railroad, who oversaw this part of the Railroad's operations, had seen him riding on the building side of the track at the Snake Lead and that neither the Trainmaster nor anyone else told him not to ride on the building side of cars when working on the Snake Lead. The person who was the General Manager of the Railroad at the time of the accident testified that it was the custom and practice of most of the Railroad's employees to ride on the building side of railroad cars when there was enough clearance.

The trainman riding on the side of the railroad car signaled the engineer when to stop so that the car would be positioned where the customer wanted it. Because that spot was often related to a particular building feature (e.g., a building door), it was easier for the trainman to properly line up the car if he was located between the car and the building.

When denying the Railroad's motion for judgment notwithstanding the verdict, the district court held that the evidence was of a sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper. The district court did not err in denying the motion for judgment *n.o.v.*

**B. Did the trial court error in its evidentiary rulings?**

■■■■ This Court reviews challenges to a trial court's evidentiary rulings under the abuse of discretion standard. *Perry v. Mag-*

*ic Valley Regional Medical Center,* 134 Idaho 46, 995 P.2d 816 (2000). Any error in the admission of evidence that does not affect the substantial rights of the parties will be disregarded. *Hake v. DeLane,* 117 Idaho 1058, 793 P.2d 1230 (1990); I.R.E. 103; I.R.C.P. 61. This Court reviews *de novo* a trial court's decision regarding the relevancy of evidence. *Lawton v. City of Pocatello,* 126 Idaho 454, 886 P.2d 330 (1994). All relevant evidence is generally admissible. *Id.;* I.R.E. 402. Evidence is relevant if it has any tendency to make the existence of a material fact more or less likely than it would be without the evidence. I.R.E. 401.

**1. Did the trial court err in allowing Howell to present evidence that the Railroad had violated certain federal regulations and in failing to permit the Railroad to offer evidence regarding the construction of those regulations?**

Howell presented evidence that the Railroad had violated two federal regulations. One regulation dealt with drainage or other water carrying facilities located under or immediately adjacent to the roadbed. The other dealt with ballast, typically gravel, that supports the track. The Railroad argues that these regulations were not enacted for the safety of employees, and that Howell should not have been permitted to offer testimony that these regulations were violated. The Railroad offered testimony from a former director of the Federal Railroad Administration (FRA) that the Railroad had not violated either of the two federal regulations. It also wanted to offer evidence that the FRA had investigated the accident and had not cited the Railroad for any violations in order to show that the Railroad had not violated the federal regulations. The district court stated that the Railroad could not offer evidence that the FRA had investigated the accident and had not issued any citations and that if the Railroad obtained the written report from the FRA, it would not permit the report to be admitted into evidence if it were offered.

The jury found that the Railroad had not violated either regulation. Therefore, we need not address whether the trial court erred because any error in this regard was harmless. *Student Loan Fund of Idaho, Inc. v. Duerner,* 131 Idaho 45, 951 P.2d 1272 (1998).

2. **Did the trial court err in allowing Howell to offer evidence that there was a hazard of tripping had Howell been walking along the tracks?**

In railroad parlance, a "walkway" is the area along the railroad track extending several feet beyond the end of the railroad ties where a brakeman or switchman can walk without having to step on or over the ties. Howell questioned one of the Railroad's executive vice-presidents about what Howell contended were tripping hazards in the walkway along the Snake Lead. Howell was specifically concerned about extra-long ties that remained where a switch had been removed. Although the executive vice-president testified that such ties did not create a tripping hazard, the Railroad argues that it was reversible error for the trial court to permit Howell even to ask the questions because this case did not involve tripping or any injury from those ties. Thus, our inquiry is whether evidence of a possible tripping hazard in the walkway has any tendency to make a fact material to this dispute appear more or less likely to exist.

One of the arguments made by the Railroad was that Howell could have simply walked along the track ahead of the train rather than riding on the railroad car. Howell tried to show that the extra-long ties extending into part of the walkway and the snow created a risk of tripping had Howell chosen to walk instead of ride. Such evidence was relevant to Howell's contributory negligence. The trial court did not err in permitting such questioning.

3. **Did the trial court err in permitting questioning about the training of Railroad employees?**

The Railroad argues that the district court erred in permitting the engineer, a former Railroad employee, and Howell to testify to certain training they had received. Howell called as a witness the engineer who was operating the locomotive at the time of the accident. The engineer had begun working for the Railroad on January 18, 1995, as a brakeman. Howell asked the engineer what training the Railroad had given him before he began working as a brakeman. The Railroad objected on the ground that he was not working as a brakeman or conductor at the time of the accident, and the trial court overruled that objection. The engineer then answered that the Railroad had him read the book of rules and that he then had on-the-job training. The engineer also testified that after working four months as a brakeman, he became a conductor, and that three months after that he became an engineer. He was then questioned about the authority of a brakeman, conductor, and engineer. One of the arguments raised by the Railroad was that Howell was in charge of the train at the time of the accident, and it was therefore his decision to proceed into the Snake Lead without first running a locomotive down the track to clear the snow. The question to which the Railroad objected was foundational to the testimony given by the engineer regarding the duties and authority of a brakeman, conductor, and engineer. The trial court did not err in overruling the objection.

The Railroad next argues that the trial court erred in permitting an engineer, who worked for the Railroad at the time of the accident, to compare the engineer-training program of the Union Pacific Railroad with that of the Railroad. The witness had been trained as an engineer by the Union Pacific Railroad and had worked on the track, including the Snake Lead, later purchased by the Railroad from the Union Pacific Railroad. After that purchase, he was hired by the Railroad as an engineer. Howell did not ask him to compare the training he had received at the Union Pacific Railroad with that provided by the Railroad. Rather, Howell asked him to state what he did to become qualified as a locomotive engineer. The Railroad objected on the ground of relevance, and the trial court overruled that objection because the question went to the witness' qualifications. The witness then briefly

described his training. The trial court did not err in permitting the testimony because it was relevant to the witness' qualifications as an expert witness.

██ Finally, the Railroad argues that the trial court erred in permitting Howell to testify to training he had received on matters not relevant to this accident. The Railroad did not object to those questions, however. Therefore, it did not preserve the right to challenge on appeal the admission of such evidence. I.R.E. 103(a)(1).

## C. Did the trial court properly instruct the jury?

██ The Railroad argues that the trial court did not properly instruct the jury on the issues of negligence and causation. The standard of review for issues concerning jury instructions is limited to a determination whether the instructions, as a whole, fairly and adequately present the issues and state the law. When the instructions, taken as a whole, do not mislead or prejudice a party, an erroneous instruction does not constitute reversible error. *Lunders v. Estate of Snyder*, 131 Idaho 689, 963 P.2d 372 (1998).

### 1. Did the trial court properly instruct the jury on the issue of negligence?

██ The Railroad contends that the trial court erred in failing to give its proposed instructions numbered 13 and 14 stating that the harm had to be foreseeable in order for

the Railroad to be negligent.[1] The trial court's instructions to the jury included the following:

### INSTRUCTION NO. 19

"Negligence" is defined by the law as the doing of some act that a reasonable and prudent person would not do, or the failure to do something that a reasonable and prudent person would do, under the circumstances existing at the time in question. In other words, "negligence" is the failure to use ordinary care under the circumstances to avoid creating an unreasonable risk of danger to another person.

"Ordinary care" is not an absolute term, but a relative one. In deciding whether "ordinary care" was exercised in a given case, the conduct in question must be viewed in light of all the surrounding circumstances as shown by the evidence in the case. "Ordinary care" is that care which a reasonable, prudent person exercises in the management of his own affairs so as to avoid injury to himself or others.

### INSTRUCTION N0. 21

Because the amount of care exercised by a reasonably prudent person varies in proportion to the danger known to be involved in what is being done, it follows that the amount of care or caution required, in the use of ordinary care, will vary with the

---

1. The two instructions offered by the Railroad were as follows:

INSTRUCTION NO. 13
FORESEEABILITY

The defendant is not required to guard its employees against injury which a reasonably prudent person acting at the same time and under like circumstances would not anticipate as reasonably likely to happen. If a person lacks a reasonable ground to anticipate at the relevant time that a particular condition would or might result in injury or that an employee would or might engage in conduct that reasonably could be expected to result in his being injured, then that person is not required to do anything to change that condition or instruct that employee not to engage in such conduct.

This means that the plaintiff is required to show that there was a "reasonable foreseeability of harm" in order to establish negligence. The defendant's duties are determined by what was reasonably foreseeable or reasonably

should have been anticipated under the circumstances. Plaintiff has the burden to prove that defendant, through its officers, agents or employees using ordinary care, should have reasonably foreseen that plaintiff would or might be injured under the circumstances leading up to the injuries, including plaintiff's own conduct, at a time that defendant reasonably could have acted differently then [sic] it did to prevent the injuries.

INSTRUCTION NO. 14
KNOWLEDGE OF DANGER

You are further instructed that the defendant may not be held liable on the basis of hindsight; that is of knowledge or the appreciation of dangers which reasonable men working under these circumstances only were likely to acquire after plaintiff was injured. Whether the defendant exercised reasonable care, therefore, must be determined in light of all of the circumstances existing before plaintiff's injuries occurred.

nature of what is being done, and all the surrounding circumstances shown by the evidence in the case.

### INSTRUCTION NO. 21(a)

A continuous duty exists on the part of an employer to use ordinary care in furnishing its employees with a reasonably safe place within which to work. The amount of caution required by that duty varies in direct proportion to the dangers known to be involved in the work.

Thus, the amount of caution required of a railroad company, in the exercise of ordinary care, to furnish its employees a reasonably safe place within which to work, increases or decreases as do the dangers known to exist or that reasonably should be apprehended.

In the absence of knowledge or notice to the contrary and in the absence of circumstances that caution an employee or would caution a reasonably prudent person in like position to the contrary, an employee may assume that the employer has exercised ordinary care in furnishing a reasonably safe place within which to work, and the employee may rely and act on that assumption.

The Railroad alleges that the instructions did not adequately inform the jury that the Railroad's knowledge of the circumstances and dangers had to be viewed from the perspective of what was known before the accident and not with the benefit of hindsight after the accident.

The instructions given by the trial court adequately informed the jury that they must base their decision upon what the Railroad, or its employees, knew or reasonably should have known at the time of the accident. The definition of "negligence" contained in Instruction No. 19 included the limitation that the conduct must be viewed "under the circumstances existing at the time in question." Instruction No. 21 informed the jury that the amount of care exercised by a reasonably prudent person varies in proportion to the danger known to be involved "in what is being done," not in what was done. Instruction No. 21(a) included the statement, "Thus, the amount of caution required of a railroad

company, in the exercise of ordinary care, to furnish its employees a reasonably safe place within which to work, increases or decreases as do the dangers known to exist or that reasonably should be apprehended." The phrase "known to exist or that reasonably should be apprehended" is clearly looking from the perspective at the time of the conduct and not in hindsight.

### 2. Did the trial court properly instruct the jury on the issue of causation?

■ The trial court did not give the Railroad's requested instruction that provided, "If you find that the cause of plaintiff's injuries was the negligence of the plaintiff and not any negligence of the defendant nor any violation of the regulations alleged by plaintiff, then your verdict must be for the defendant." The Railroad argues that the jury was therefore not adequately instructed regarding its defense that Howell's injuries were caused solely by his own negligence.

The trial court instructed the jury that Howell had the burden of proving "that the defendant's negligence caused or contributed to some injury and consequent damage sustained by the plaintiff." The trial court instructed the jury, "The defendant had a right to assume that the plaintiff would exercise reasonable care for his own safety." The trial court told the jury, "In addition to denying that any negligence of the defendant caused any injury and consequent damage to the plaintiff, the defendant alleges, as a defense to plaintiff's allegation of negligence, that contributory negligence on the part of the plaintiff himself was the cause of any injury and consequent damages plaintiff may have sustained." The trial court then instructed the jury that the Railroad had the burden of proving "that the plaintiff was at fault and that the plaintiff's fault caused his own injuries and consequent damages." When instructing the jury on damages, the trial court told it, "The fact that I give you instructions regarding damages does not mean that I believe that the plaintiff is entitled to recover any damages in this case. Instructions about damages are given to you merely as a guide in the event you find from a preponderance of the evidence that the

**742**

defendant was negligent ... and that its negligence ... caused plaintiff's injuries." The damage instructions also included the statements that "[t]he burden is on the plaintiff in this action to prove by a preponderance of the evidence that the injuries complained of by him exist, and that those injuries are the result of defendant's negligence" and that "if the plaintiff fails to carry the burden of proving ... that [his] injuries resulted from defendant's negligence, if any, ... he is not entitled to recover damages in this action." Finally, in the special verdict form the jury was asked separately whether the Railroad was negligent, whether the Railroad's negligence was a cause of Howell's injury, whether Howell was contributorily negligent, and whether his negligence was a cause of his injury. Considering the instructions as a whole, the jury was not misled into believing that it could not find that Howell's negligence was the sole cause of his injury.

### IV.

### CONCLUSION

The trial judge did not err in denying the Railroad's motion for judgment *n.o.v.*, it did not err in its evidentiary rulings, and the jury instructions, as a whole, fairly and adequately presented the issues, stated the law, and did not mislead the jury. We affirm the judgment, and award costs to Howell on appeal.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL concur.