91 P.3d 1117

**Laurella F. MILLER, a widow, and Robert Mostek and Allen G. Miller, Co-Trustees of the Testamentary Trust of Kenneth W. Miller, Deceased, Plaintiffs-Respondents,**

**v.**

**Clark E. CALLEAR and Leeann Callear, husband and wife, Defendants-Appellants.**

No. 29588.

Supreme Court of Idaho,
Boise, April 2004 Term.

May 20, 2004.

Clinton J. Henderson, Clarkston, Washington, for appellants. Mr. Henderson argued.

Clements, Brown & McNichols, Lewiston, for respondents. Michael E. McNichols argued.

EISMANN, Justice.

This is an appeal from a judgment determining the boundary between adjoining landowners and awarding damages for timber trespass. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

The dispute in this case centers upon whether the Wells Bench County Road is the boundary between property owned by Laurella Miller and the Testamentary Trust of Kenneth Miller (the Millers) and property owned by Clark and Leeann Callear (the Callears). From 1947 until 1964, Lou and Ethel Fay owned both properties as one parcel. In 1964 they hired surveyor Sam Garten to survey a portion of their property lying west of the Wells Bench County Road in order to prepare a legal description so that they could sell that property to the McRoberts. On June 11, 1964, the Fays sold the property to the McRoberts, using in the deed the legal description prepared by Garten. The McRoberts later divided their property roughly in half and sold each parcel to different parties. Eventually, however, both parcels came back into common ownership, and

on December 24, 1999, the Callears purchased both of those parcels. On September 10, 1976, the Fays sold the remainder of their property to the Millers, using the legal description prepared by Garten to exclude from the sale the property that they had previously sold to the McRoberts. As a result of those conveyances, the Callears own the property west of the county road and the Millers own the property east of the county road.

The diagram prepared by Garten in connection with his survey showed a parcel of property with the western boundary a straight north-south line 2640 feet long, the northern boundary a straight east-west line 363 feet long, the southern boundary a straight east-west line 132 feet long, and the eastern boundary a convex arc, roughly in the shape of the county road. The primary issue was whether the convex arc described in Garten's legal description followed the county road or was located east of the county road.

The Callears contended that their property extended east of the county road. They hired a professional surveyor, who concluded that their property extended east of the road. In June 2000, they hired men to log trees growing on the east side of the road. On September 15, 2000, the Millers filed this lawsuit to quiet their title in the disputed property east of the road and to recover damages for trespass.

The quiet title issue was tried to the district court sitting without a jury. On June 28, 2002, the district court issued its memorandum decision and order finding in favor of the Millers. The issue of damages was then tried to a jury, and on March 3, 2003, it returned a verdict finding that the Millers were entitled to recover $3,622.00 for the value of the timber and $1,000 in additional damages. Pursuant to Idaho Code § 6–202, the district court trebled the damages awarded for the value of the timber, so that the total damages was $11,866.00. The district court also awarded the Millers costs, including attorney fees, in the sum of $9,649.13. The Callears then appealed.

## II. ISSUES ON APPEAL

A. Were the findings of the trial court supported by substantial and competent evidence?

B. Did the trial court err in refusing to give jury instructions requested by the Callears?

C. Are the Millers entitled to an award of attorney fees on appeal?

## III. ANALYSIS

■■■ A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 55 P.3d 304 (2002); IDAHO R. CIV. P. 52(a). When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court. *Id.* It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. *Id.* On appeal, this Court examines the record to see if challenged findings of fact are supported by substantial and competent evidence. *Id.* Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Id.*

### A. Were the findings of the trial court supported by substantial and competent evidence?

■■ **1. County road as boundary line.** The parties' properties were conveyed according to the legal description prepared by Garten in connection with his survey. The issue was the location of that legal description on the ground. The Garten legal description commenced at the quarter corner on the southern boundary of the section, and then went due north 1320 feet to the "true point of beginning." The accompanying diagram showed that Garten assumed that an existing north-south fence intersected that quarter corner. His legal description then proceeded from the true point of beginning due north along that fence for a distance of 2640 feet, and "[t]hence due East for a distance of 363 feet to the center of county road." The Wells Bench County Road was the only county road in the area. The legal description then had six calls designated by bearing and distance that described a convex arc to the southern boundary, and from there due west a distance of 132 feet to the point of beginning.

The Millers called as an expert witness a professional land surveyor who, prior to being licensed, had done some work for Garten, although not the survey at issue in this case. He did not perform a survey of the property prior to testifying, but merely presented expert testimony based upon the Garten survey and a survey done by the Callears' expert. Millers' expert testified, based upon the assumption that two iron pipes he found marked the western boundary of the Garten survey, that Garten's legal description closely followed the centerline of the county road. He also stated that when doing rural surveys, Garten typically used a staff compass rather than a more accurate transit.

The Callears hired a professional land surveyor to survey a portion of the disputed boundary line and then testify at trial. He assumed that the real point of beginning was 1336 feet north of the quarter corner, not 1320 as Garten had stated in his legal description. He then followed the bearings and distances from Garten's survey in a counter-clockwise direction to establish a portion of the boundary between the Millers' and Callears' properties. According to him, that portion of the boundary was east of the county road.

■■ The Garten legal description states that the northeast corner of the property he surveyed was a point on the centerline of the county road. The survey done by Callears' expert covered, beginning at the southeast corner, five of the six calls in the arc described by Garten as the eastern boundary of the property he surveyed. If the survey done by the Callears' expert were extended northward according to the final call in the eastern boundary of the Garten survey, the northeast corner of the property would be about 125 feet east of the centerline of the county road. Thus, the survey done by Callears' expert does not correspond to the call in the Garten survey that the northern boundary of the property proceeds "due East for a distance of 363 feet to center of county road." In construing a deed, physical features existing upon the ground and referred to in the description must be considered.

*Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 794 P.2d 1389 (1990). Monuments, natural or artificial, or lines marked on ground, control over calls for courses and distances. *Id.* A fixed monument or marker is controlling over a conflicting call to course and distance, if it is of a permanent nature and established with reasonable certainty. *Id.*

The district court was not persuaded by Callears' expert. When analyzing his testimony, the district court noted that the expert admitted "that the Garten description was 'influenced by' the road alignment and that the Garten boundary was 'close to' the county road line," but he would not admit that Garten used the county road as the boundary. The district court concluded that the Callears' surveyor "never could adequately explain why Garten would choose to put the first call in the center of the county road, but not follow the road to set the rest of the boundary."

The Callears argue that the district court should have disregarded the Garten survey because it should not have been admitted into evidence. They argue that there was not an adequate foundation showing that it complied with the United States Manual of Surveying Instructions. In their trial memorandum submitted two weeks before trial, the Callears argued that the Garten survey should not be admissible into evidence unless the Millers laid the foundation showing that the survey was conducted according to the United States Manual of Surveying Instruction. When the Millers offered Exhibit 2 (a copy of the Garten survey) and Exhibit 25 (an enlarged copy of the Garten survey) into evidence, however, the Callears stated that they had no objection.

MR. McNICHOLS: Your Honor, at this time I don't think, in my notes at any rate, that the Garten survey, Exhibit 2 and 55[sic], has yet been admitted, so I would offer 2 which is the original and 25 which is the enlargement.

THE COURT: Any objection?

MR. HENDERSON: Actually, nobody would know what we're talking about unless those exhibits were admitted, Your Honor, and I have no objection.

THE COURT: Two and 25 will be admitted.

Where the Callears did not object to the admission of the Garten survey during the trial, we will not consider that issue on appeal. No objection having been made to the evidence, the district court could rely upon it in reaching its decision. *McNeil v. Gisler*, 100 Idaho 693, 604 P.2d 707 (1979).

In addition to the testimony of the Millers' surveyor, the district court also noted that all of the Millers' witnesses testified that the county road had been considered the boundary line for the properties lying east and west of it for years, and none of the Callears' witnesses testified to the contrary. The district court found that the McRoberts did not intend to purchase any property east of the county road when they purchased the property from the Fays. After the McRoberts divided the property roughly into a northern half and a southern half, Gail and Carriebel Triplett ultimately acquired both parcels. Gail Triplett testified that he understood the county road was the eastern boundary of both parcels of his property and that he did not possess any property to the east of the road. The district court also found that Gale Triplett told the Callears that the county road was the eastern boundary of his property. The Tripletts conveyed the property to the Callears using two deeds rather than using one deed that described the entire property. The deed to the Callears of the northern parcel described it as "[t]hat portion of Government Lot 4, lying west of the County Rd." In addition, the Millers had constructed a fence that generally ran along the eastern side of the county road, right up to the road in some places and farther away in others due to the terrain and to avoid being damaged by snow plows. They repaired the fence yearly because of the snow, and it had been sufficient to hold cattle over the years. The district court noted that no one testified that the fence was not in working order prior to and during the time when the Callears purchased their property. Finally, before purchasing the property, Mr. Callear viewed a map in the county assessor's office that showed the Tripletts as owning the property west of the county road and the Millers owning the property east of the county road.

When the court is the trier of fact, its duties include determining the credibility

of witnesses, the weight to be given their testimony, its probative effect, and the inferences and conclusions to be drawn from their testimony. *Levin v. Levin,* 122 Idaho 583, 836 P.2d 529 (1992). The opinion of an expert is not binding on the trial court, and, as long as it does not act arbitrarily, the trial court may reject expert testimony even when it is uncontradicted. *Id.; Simpson v. Johnson,* 100 Idaho 357, 597 P.2d 600 (1979). The decision of the trial court that the county road marks the western boundary of the property purchased by the Millers is supported by substantial and competent evidence.

 2. **Defense of estoppel regarding Millers' claim for damages.** At the court trial, the Callears claimed that the Millers should be estopped from claiming ownership to the disputed strip of land. They based their claim upon the allegation that the Millers told Mr. Callear the fence was the boundary line between their respective properties. One of the elements of equitable estoppel is that the person to whom the representation was made or from whom the facts were concealed relied and acted upon the representation or concealment to his or her prejudice. *Young Elec. Sign Co. v. State, ex rel. Winder,* 135 Idaho 804, 25 P.3d 117 (2001). The district court denied the claim of estoppel during the court trial because, among other reasons, all of the alleged representations occurred after the Callears purchased their property. Therefore, they could not have relied upon those representations when purchasing their property.

On appeal, the Callears argue that the district court erred because they would not have logged the timber east of the road but for the Millers' alleged representations that the fence was the boundary line. The issues in this case were bifurcated, with the issue of title being tried first to the district court and the issue of damages being tried later to a jury. Whether the Millers should be estopped from claiming damages would have been an issue at the jury trial, not at the earlier court trial. The Callears do not point to anything in the record indicating that the issue of estoppel was presented to the jury as a defense to the Millers' claim for damages. This Court will not search the record for error. *Vulk v. Haley,* 112 Idaho 855, 736

P.2d 1309 (1987). We do not presume error on appeal; the party alleging error has the burden of showing it in the record. *Woods v. Crouse,* 101 Idaho 764, 620 P.2d 798 (1980). Therefore, the Callears have failed to show any error in this regard.

The district court also found that the boundary between the Callear and Miller properties had been established under the alternative theories of adverse possession and boundary by agreement. The Callears contend that the district court's findings on these two theories are not supported by substantial and competent evidence. Since we have upheld the district court's finding regarding the boundary based upon the Garten survey and legal description, we need not address these alleged errors.

**B. Did the trial court err in refusing to give jury instructions requested by the Callears?**

 The Callears argue that the district court erred in refusing to give two of their requested jury instructions. The standard of review for issues concerning jury instructions is limited to a determination whether the instructions, as a whole, fairly and adequately present the issues and state the law. *Howell v. Eastern Idaho Railroad, Inc.,* 135 Idaho 733, 24 P.3d 50 (2001). When the instructions, taken as a whole, do not mislead or prejudice a party, an erroneous instruction does not constitute reversible error. *Id.* The refusal to give a particular requested instruction is likewise not erroneous where the substance of the proposed instruction is covered elsewhere in the instructions given. *Watson v. Navistar Int'l Transp. Corp.,* 121 Idaho 643, 827 P.2d 656 (1992). As stated above, this Court does not presume error on appeal; the party alleging error has the burden of showing it in the record. *Woods v. Crouse,* 101 Idaho 764, 620 P.2d 798 (1980). The jury instructions given by the district court were not made part of the record on appeal. Therefore, the Callears have failed to show any error in refusing to give their requested jury instructions.

**C. Are the Millers entitled to an award of attorney fees on appeal?**

 The Millers request attorney fees on appeal pursuant to Idaho Code § 6-202,

which provides that in an action for trespass the owner of the land is entitled to recover treble damages "plus a reasonable attorney's fee which shall be taxed as costs, in any civil action brought to enforce the terms of this act if the plaintiff prevails." Since the Millers are the prevailing parties on this appeal, they are entitled to an award of attorney fees under that statute.

## IV. CONCLUSION

The judgment of the district court is affirmed. Costs on appeal, including a reasonable attorney fee, are awarded to the respondents.

Chief Justice TROUT, and Justices SCHROEDER, KIDWELL, and BURDICK concur.