104 P.3d 958

Ruth N. SLACK, Plaintiff–Respondent,

v.

Louis M. KELLEHER, Defendant–Appellant.

No. 29583.

Supreme Court of Idaho, Boise, September 2004 Term.

Dec. 15, 2004.

Rehearing Denied Jan. 25, 2005.

Saetrum Law Offices, Boise, for appellant. Rodney R. Saetrum argued.

Hepworth, Lezamiz & Janis Chtd., Boise, for respondent. John W. Kluksdal argued.

EISMANN, Justice.

This is an appeal from a jury verdict awarding damages arising out of a traffic accident. We affirm the judgment except for the district court's denial of the defendant's motion to treat as a collateral source the mandatory reductions in the charges for the plaintiff's medical care due to Medicare "write-downs." Because such write-downs are to be treated as a collateral source, we remand to the district court to reduce the amount of the judgment accordingly.

## I. FACTS AND PROCEDURAL HISTORY

During the late afternoon of November 16, 1999, the defendant-appellant Louis Kelleher (Kelleher) and his wife each drove a farm implement from their small farm near Greenleaf, Idaho, to an auction sales yard located near Caldwell on Highway 19. Kelleher drove a swather and his wife drove a tractor pulling a grain drill. After leaving the swather and grain drill at the auction yard, they proceeded to return home on the tractor. They had arrived at the auction yard just after sunset, and they left about ten minutes later. Kelleher was driving and his wife was riding on the tractor's left fender.

The rear of the tractor had two downward-pointing white lights and a slow moving vehicle emblem. Kelleher had driven the tractor about two miles down the right-hand lane of Highway 19 when a car being driven by the plaintiff-respondent Ruth Slack (Slack) collided with the rear of the tractor. She had been following a car in the right-hand lane, and when that car changed lanes to avoid the tractor Slack did not respond in time to avoid the collision. The speed limit where the accident occurred was 55 miles per hour. Just prior to the accident, Slack had been driving her car at about the speed limit, and Kelleher had been driving the tractor at about 12 to 14 miles per hour.

Kelleher was thrown from the tractor, sustaining injuries, but his wife remained on it and was able to bring the tractor to a stop. Slack was also injured. Her right leg was crushed from the knee to ankle, and she had ten broken or dislocated bones in her right leg, some of which were compound fractures. During the next two months, Slack had three surgeries and weeks of rehabilitation.

On March 17, 2000, Slack filed this lawsuit seeking to recover damages for her injuries.

In response, Kelleher filed an answer and counterclaim seeking damages for his injuries. Kelleher's counterclaim was settled, and it was dismissed.

The case was tried to a jury in March 2003, and it returned a verdict awarding Slack $102,512.00 in economic damages and $153,000.00 in non-economic damages. It also found that both Slack and Kelleher were negligent, and it apportioned causation 15% to Slack and 85% to Kelleher.

On March 14, 2003, Kelleher filed a motion to determine collateral source payments under Idaho Code § 6–1606. One of the issues raised by the motion was that the judgment should be reduced by the Medicare "write-off" (the reduction in charges required by Medicare regulations and federal law). By order entered on July 16, 2003, the district court denied the motion. Kelleher timely appealed.

## II. ISSUES ON APPEAL

A. Did the district court err in holding that evidence of an alternate route Kelleher could have taken was relevant?

B. Did the district court abuse its discretion in admitting into evidence a videotape of the alternate route?

C. Did the district court err in instructing the jury regarding Slack's life expectancy without allowing Kelleher to introduce evidence of her poor health?

D. Did the district court err in not admitting portions of the deposition testimony of an expert witness after Slack had introduced other portions of such deposition testimony?

E. Did the district court err in excluding evidence that Slack had cataracts at the time of the accident?

F. Did the district court err in denying a mistrial after Slack's counsel referred in closing argument to the lack of testimony that her poor health was a cause of the accident?

G. Did the district court err in denying Kelleher's motion to reduce the judgment by the amount of Slack's Medicare benefits?

## III. ANALYSIS

### A. Did the District Court Err in Holding that Evidence of an Alternate Route Kelleher Could Have Taken Was Relevant?

Slack sought to offer evidence that Kelleher's negligence included the failure to use a dirt road that ran alongside Highway 19. Kelleher objected to such evidence on the ground that it was not relevant as a matter of law. The district court ruled that such evidence was relevant.

Idaho Rule of Evidence 401 provides, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Whether evidence is relevant is an issue of law over which we exercise *de novo* review. *State v. Page,* 135 Idaho 214, 16 P.3d 890 (2000).

Highway 19 is a five-lane, rural highway, with two lanes for eastbound traffic, two lanes for westbound traffic, and a center turn lane. There was evidence that Kelleher began his return trip about ten minutes after sunset. The sky was overcast, which would have decreased visibility as he drove down the highway in the dimming sunlight. His tractor was not equipped with the statutorily required, rear-facing, two red lamps or single red lamp and two red reflectors. I.C. § 49–916(3). The only rear-facing lighting on the tractor was two white lights, which pointed downward towards the area where an implement would be if it were attached to the tractor. As he drove down the highway, his tractor was traveling about forty miles per hour slower than the rush-hour traffic. There was expert testimony that the most prevalent type of rear-end collision occurs when a vehicle traveling at normal speed comes upon a slow moving vehicle. The expert testified that the frequency of this type of accident results from the typical driver's inability to judge accurately the rate at which the driver's vehicle is closing upon one just ahead.

Slack sought to introduce evidence showing that there was a dirt road alongside Highway 19 that Kelleher could have taken and thereby avoided having his slow-moving, improperly lit, tractor traveling at dusk in rush-hour traffic on a rural highway. It was unlawful for Kelleher to drive his slow-moving tractor on the highway after sunset because it lacked the statutorily required lighting. By doing so at dusk during rush hour on a five-lane highway with a 55–mile–per–hour speed limit, Kelleher was creating a traffic hazard. Under the facts of this case, evidence that there was an alternate safer route that would enable Kelleher and his wife to return home on their tractor was relevant for the jury to consider when assessing the degree of causation attributable to each party.

### B. Did the District Court Abuse Its Discretion in Admitting into Evidence a Videotape of the Alternate Route?

Richard Gill, Ph. D., one of Slack's expert witnesses, took a videotape of the dirt road that paralleled Highway 19. Kelleher contends that it was error for the trial court to admit that video into evidence for three reasons.

■ **1. Should the videotape have been excluded because its content was not properly disclosed?** Kelleher first argues that the content of the videotape was not properly disclosed in pretrial discovery and that it should therefore not have been admitted into evidence. He contends that the videotape was disclosed as being a video of Highway 19, not of the dirt road paralleling the Highway. In her brief, Slack counters that Kelleher never objected to the admission of the videotape on the ground that its content had not been properly disclosed during pretrial discovery. In his reply brief, Kelleher asserts that he "at least three times objected to the use of the videotape for this purpose on the grounds that the videotape had been disclosed only for the purposes of showing the section of Highway 19 where the accident took place." The record does not support Kelleher's assertion.

Prior to jury selection on the first day of trial, Kelleher's counsel asked the district court to prevent Slack's counsel from discussing the dirt road during voir dire or in his opening statement in order to give the court an opportunity to rule on whether such evidence was relevant. During his argument regarding that request, Kelleher's counsel did state, "And as I said, until Tuesday of last week, we always thought this whole concept was, well, we're just—the idea was presented, well, here's the general overview of the area. Now all of a sudden its [an] alternative route." This is the first occasion where Kelleher asserts that he "objected to the use of the videotape for this purpose on the grounds that the videotape had been disclosed only for the purposes of showing the section of Highway 19 where the accident took place." There was no such objection—only a passing comment. Kelleher's counsel did not ask the district court to bar use of the videotape because its content had not been properly disclosed. Rather, he asked that opposing counsel be prevented from mentioning during voir dire or his opening statement that Kelleher could have taken an alternate route, in order to give the district court time to rule on the relevance of such evidence. The district court granted that request with respect to voir dire in order to give the court an opportunity to read the cases cited by Kelleher. After jury selection, the district court ruled that it would not allow such evidence at all.

During the morning of the second day of trial, Slack's counsel brought up the issue of the relevance of such evidence and provided the district court with additional case authority. After recessing to review the authority, the district court held that the evidence was relevant. In response, Kelleher's counsel argued that the alternative route theory had not been alleged in the complaint. During his argument on that issue, he stated:

And so the framework as to what we were anticipating trying in this case was that we are trying this case based upon the lighting and the vehicles on the highway. It wasn't until Mr. Hepworth on Tuesday said, well, we also are planning to introduce this video for the purpose of showing an alternate route that we actually understood that their case was now focusing not

on the lighting as set forth in the complaint, but on this different theory.

This is the second occasion where Kelleher asserts that he "objected to the use of the videotape for this purpose on the grounds that the videotape had been disclosed only for the purposes of showing the section of Highway 19 where the accident took place." Again, there was no such objection. The district court ruled that under notice pleading, the general allegation of negligence was sufficient to include negligence by failing to take a safer alternate route.

The videotape was then played for the district court. After watching it, the district court asked Slack's counsel when the videotape was disclosed. He responded that the existence of the videotape was disclosed at Dr. Gill's deposition taken on May 25, 2001; that Dr. Gill had brought the video to the deposition in response to the subpoena duces tecum; that Dr. Gill had disclosed the existence of the alternate route at his deposition; and that the video had been included on exhibit lists. Slack's counsel admitted, however, that during Dr. Gill's deposition there had been no specific statement that the video showed the alternate route. In response to that statement, Kelleher's counsel said: "I think counsel was just very forthright right now with respect to what the disclosure was of, the video of Highway 19. And the rest of the tape shows traveling on Highway 19. And so that is where the focus is as we anticipated this to be." This is the third occasion where Kelleher asserts that he "objected to the use of the videotape for this purpose on the grounds that the videotape had been disclosed only for the purposes of showing the section of Highway 19 where the accident took place." Again, there was no such objection. Kelleher never asked the district court to exclude the video on the ground that its content was not timely disclosed.

■ Generally, this Court will not consider an alleged error on appeal unless a timely objection to the alleged error was made at trial. *State v. Sheahan,* 139 Idaho 267, 77 P.3d 956 (2003); I.R.E. 103(a)(1). For an objection to be preserved for appellate review, either the specific ground for the

objection must be clearly stated, or the basis of the objection must be apparent from the context. *Id.* An objection to the admission of evidence on one basis does not preserve a separate and different basis for excluding the evidence. *State v. Sheahan,* 139 Idaho 267, 77 P.3d 956 (2003). Because Kelleher never objected to the admission of the videotape on the ground that its content was not properly disclosed during pretrial discovery, we will not consider that issue on appeal.

■ **2. Did Slack show that the road was open for use by the public?** Kelleher next asserts that there was a lack of foundation for the admission of the videotape and the testimony regarding the alternate route because Slack did not establish that the dirt road was open for use by the public. He did not make that objection at trial.

■ There are generally two issues regarding the admission of evidence. The first is whether the evidence is relevant, and the second is whether a proper foundation has been laid for its admission. These are two separate issues. Relevance is an issue of law. *State v. Page,* 135 Idaho 214, 16 P.3d 890 (2000). Whether or not a proper foundation has been laid for the admission of the evidence is a discretionary decision to be made by the trial court. *State v. Sheahan,* 139 Idaho 267, 77 P.3d 956 (2003).

After the district court ruled that evidence of the alternate route was relevant, Kelleher's counsel asserted that there was no foundation that the dirt road was open to public use. At least a portion of the road appeared to be owned by the Simplot Company. Kelleher's counsel stated that Simplot's manager would testify that it would have been trespassing for Kelleher to have used the road. Slack's counsel responded that he was unaware of any disclosure by Kelleher that he would call the plant manager to so testify. Slack's counsel related his conversations with personnel in Simplot's legal department who stated that the road was open for public use. At that point, the district court was presented with conflicting assertions as to whether an adequate foundation could be established showing that the dirt road was a safer route that was open to

public use. Not having heard any foundation evidence, the district court could not at that point rule on the issue. The court simply reaffirmed its prior ruling that the evidence was relevant.

The first witness called by Slack's counsel was the deputy sheriff who investigated the accident. Slack's counsel questioned him, without objection, as to the existence of the dirt road. He stated that he did not know if it was a road, but it was an open area. Kelleher's counsel also cross-examined the deputy about the dirt road, eliciting testimony that it was not marked as a road on any of the maps he uses, that he did not know if it was private property, that he has not noticed a lot of vehicles using it, and that it is not posted "no trespassing" or "private property."

Slack's counsel next called Dr. Gill to testify. Near the end of his direct examination, Slack's counsel asked to show the videotape of the dirt road. Kelleher's counsel objected to the showing of the video on the following ground, "Your Honor, I don't think there's foundation as to what was there on the date of the accident compared to what was there on a nice summer day." He did not object on the ground that there was inadequate foundation showing that Kelleher could lawfully use the road. An objection to the admission of evidence on one basis does not preserve a separate and different basis for excluding the evidence. *State v. Sheahan*, 139 Idaho 267, 77 P.3d 956 (2003). Because Kelleher did not object on the ground that there was no foundation showing that the dirt road was a safer route open for public use, we will not consider that objection on appeal.

After Slack's counsel completed his direct examination of Dr. Gill, he offered the videotape into evidence. Kelleher's counsel objected on the following ground:

MR. SAETRUM: Your Honor, this court has previously prohibited us from introducing a photograph of the area alleging that on the basis that it wasn't at the time and date or wasn't at the time and date and of the circumstances of this accident. And I would object—

THE COURT: I want to clarify that. That ruling was made by Judge Gutierrez. It wasn't changed, and the motion wasn't made until after the time was set for the scheduling order had expired. And that was the basis for the court's ruling last Tuesday.

MR. SAETRUM: And, Your Honor, with respect to the issue of the introduction, I continue on with the—if that photograph is not allowed, then an even more distant video than the photograph should not be allowed. Object for those reasons.

Again, he did not object on the ground that there was inadequate foundation showing that Kelleher could lawfully have used the dirt road. Because Kelleher did not object on that ground, we will not consider that objection on appeal. *State v. Sheahan*, 139 Idaho 267, 77 P.3d 956 (2003).

**3. Did the district court err by failing to strike evidence regarding the dirt road?** Finally, Kelleher argues that the district court erred by not striking the evidence of the alternate route after Slack had failed to show that it was lawful for him to have used the dirt road. Kelleher admitted during oral argument that he never asked the district court to strike such evidence. If a party contends that the foundation is inadequate for admitting evidence offered by the opposing party, the party must make a proper objection. *Miller v. Callear*, 140 Idaho 213, 91 P.3d 1117 (2004). Where no motion to strike was made and no ruling was requested or made by the trial court, such alleged error was not preserved for consideration on appeal. Objections to evidence cannot be raised for the first time on appeal. *State v. Taylor*, 76 Idaho 358, 283 P.2d 582 (1955); *Goody v. Maryland Casualty Co.*, 53 Idaho 523, 25 P.2d 1045; *Neff v. Hysen*, 72 Idaho 470, 244 P.2d 146.

**C. Did the District Court Err in Instructing the Jury Regarding Slack's Life Expectancy Without Allowing Kelleher to Introduce Evidence of Her Poor Health?**

Because there was evidence that Slack had suffered permanent injuries in the accident, her life expectancy was relevant to the issue

of damages. Prior to beginning jury selection on the first day of trial, counsel for both parties and the district court discussed various evidentiary issues outside the presence of the jury. During that discussion, Slack's counsel stated that Kelleher had not disclosed any witness who would express an opinion that Slack's life expectancy had been shortened as a result of her injuries or medical condition. Kelleher's counsel responded that his medical expert would testify about general health issues with respect to Slack. The district court ruled that Kelleher could not introduce evidence that Slack's medical condition may shorten her life expectancy unless such conclusion was supported by expert opinion testimony.

During the afternoon of the fourth day of trial, Kelleher's counsel requested a conference outside the presence of the jury prior to calling his medical expert. The district court agreed that the expert could testify regarding various issues, but the district court did not change its prior ruling regarding evidence of life expectancy. Kelleher ultimately did not call the medical expert as a witness, and he argues on appeal that the district court erred in precluding the expert from testifying about Slack's poor health because it was relevant to her life expectancy.

■ Rule 103(a)(2) of the Idaho Rules of Evidence provides that a party can only assert error on the part of the trial court in excluding evidence where the party made an offer of proof at trial describing the substance of the evidence sought to be admitted. *Thorn Springs Ranch, Inc. v. Smith*, 137 Idaho 480, 50 P.3d 975 (2002). Kelleher's expert issued a report after conducting a medical examination of Slack. Kelleher's counsel provided a copy of that report to the district judge, but that report has not been included in the record on appeal. Kelleher's counsel also provided the district judge with a copy of his written disclosure made during discovery regarding the expected testimony of the medical expert. That discovery response has likewise not been included as part of the record on appeal. During the discussion regarding the medical expert's expected testimony, Kelleher's counsel did not claim that the expert would testify that in his opinion Slack's medical condition would shorten her life expectancy.

■ To be admissible, evidence must be relevant. Slack was 71 years old. Whether or not her heart attack or other medical conditions would shorten her life expectancy are matters beyond the competence of the average layperson or juror. Therefore, Kelleher was required to produce expert testimony that Slack's medical condition would shorten her life expectancy. An expert opinion that merely suggests possibilities, and not probabilities, would only invite conjecture and may be properly excluded. *Bromley v. Garey*, 132 Idaho 807, 979 P.2d 1165 (1999). There is nothing in the record indicating that Kelleher's medical expert would testify, to a reasonable degree of medical probability, that in his opinion Slack's life expectancy would be shortened by any of her medical conditions. The district court did not err in excluding the speculative evidence.

**D. Did the District Court Err in Not Admitting Portions of the Deposition Testimony of an Expert Witness After Slack Had Introduced Other Portions of Such Deposition Testimony?**

Prior to trial, Slack took the video deposition of her orthopedic surgeon for use at trial. Slack's counsel redacted portions of the deposition, in an effort to delete evidence that the district court had previously ruled was not admissible. During the morning of the third day of trial, Kelleher's counsel objected to Slack's counsel being permitted to offer a redacted video deposition of the Doctor. Counsel for the parties and the district court then discussed the redactions outside the presence of the jury for about an hour. The district court ruled that several of the redactions should be included in the video and asked Kelleher's counsel to make a list of the remaining redactions he wanted included. During the morning of the fifth day of trial, the district court stated its ruling regarding the other redacted portions of the deposition. Kelleher's counsel then stated that he would read to the jury those redacted portions of the deposition that the district court ruled were admissible.

924

■ Kelleher argues that a party should not be permitted to redact any portion of a deposition taken for use at trial because that would be the equivalent of unilaterally deleting trial testimony. He offers no authority for that novel proposition. A deposition, whether taken for discovery or for use at trial, is just that—a deposition. Any part or all of a deposition may be used at trial, assuming compliance with Rule 32(a) of the Idaho Rules of Civil Procedure and admissibility under the Idaho Rules of Evidence. "If only part of a deposition is offered in evidence by a party, an adverse party may require the party to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts." I.R.C.P. 32(a)(4). Those portions of a deposition that "in fairness" should or should not be admitted lies within the discretion of the trial court. *State v. McKinney*, 107 Idaho 180, 687 P.2d 570 (1984).

■ Kelleher does not point to any redacted portions of the deposition that he contends were wrongly excluded by the district court. He simply objects to the procedure followed by Slack in redacting portions of the deposition. This Court reviews challenges to a trial court's evidentiary rulings under the abuse of discretion standard. *Howell v. Eastern Idaho Railroad, Inc.*, 135 Idaho 733, 24 P.3d 50 (2001). Any error in the admission of evidence that does not affect the substantial rights of the parties will be disregarded. *Id.* Kelleher has not pointed to any error that affected his substantial rights.

**E. Did the District Court Err in Excluding Evidence that Slack Had Cataracts at the Time of the Accident?**

The accident occurred on November 16, 1999. Six months later Slack went to her optometrist to replace her broken glasses, and he conducted a comprehensive eye examination during which he diagnosed her as having brunescent and nuclear sclerotic cataracts in both eyes. He referred her to an ophthalmologist, who performed surgery to remove the cataract in one eye.

Kelleher sought to have the Optometrist testify regarding Slack's cataracts. In an offer of proof, he questioned the Optometrist, who testified that the types of cataracts Slack had were slow growing in nature and that in his opinion she had those cataracts on November 16, 1999. He also testified that in general a person with cataracts has diminished ability to distinguish contrast and color, will experience more glare, and will have difficulty at nighttime with certain types of lights. The Optometrist also stated that in his opinion, Slack would have been experiencing those conditions on November 16, 1999. The district court held that evidence of Slack's cataracts was irrelevant, and Kelleher challenges that ruling on appeal.

■ Appellate courts review issues of whether to admit or exclude evidence under an abuse of discretion standard. *Mac Tools, Inc. v. Griffin*, 126 Idaho 193, 199, 879 P.2d 1126, 1132 (1994). The relevance of the cataracts would be to show that Slack was negligent in driving about twenty minutes after sunset when she had cataracts. As Kelleher's counsel argued, "And so the issue of negligence as to what Ruth Slack could see becomes a negligence issue that a reasonable person knew or should have known that they were having problems and failed to take response prior to this accident."

■ Prior to ruling on the admissibility of such evidence, the district judge read the depositions of the Optometrist and the Ophthalmologist. Neither of those depositions have been included as part of the record on appeal. When a party appealing an issue presents an incomplete record, this Court will presume that the absent portion supports the findings of the district court. *Gibson v. Ada County*, 138 Idaho 787, 69 P.3d 1048 (2003).

During the argument regarding the admissibility of evidence regarding Slack's cataracts, the district court mentioned that the Ophthalmologist testified in his deposition that the symptoms of cataracts vary from person to person, and even from day to day in the same person. Slack's counsel also stated that the Optometrist testified in his deposition that the changes in vision experienced by people who have cataracts will be slow and subtle and that many people have

no idea that their vision has changed. He also quoted the Optometrist's deposition testimony that in May 2000 he did not tell Slack to restrict her driving due to her cataracts.

Kelleher has not pointed to any evidence in the record indicating that Slack knew she had cataracts or any night vision impairment prior to the accident, or that the condition of her cataracts was such that a reasonable person would have known he or she had a night vision impairment. He sought to offer evidence of her cataracts on the issue of Slack's negligence, and he has not shown that such evidence was relevant to that issue.

### F. Did the District Court Err in Denying a Mistrial After Slack's Counsel Referred in Closing Argument to the Lack of Testimony that Her Poor Health Was a Cause of the Accident?

Evidence was admitted during trial that Slack suffered a heart attack during her first surgery to correct injuries she suffered during the accident. Evidence of her heart condition was admitted because her orthopedic surgeon decided against a preferred option of fusing her ankle during surgery five days later out of concern that the surgery would trigger a second heart attack. During his rebuttal closing argument, Slack's counsel stated:

> [MR. HEPWORTH:] You'll see among the instructions you've been given that whenever evidence was admitted for a limited purpose, you must not consider it for any other purpose. And you'll recall during this trial that the judge offered limiting instructions at times during this trial that referred to the evidence of Mrs. Slack's heart disease which affected her ability to have surgery.
>
> The court gave a limiting instruction that that would not be considered for any other purpose. The reason for that limiting instruction is that there is no evidence that Mrs. Slack's heart condition had anything to do with this accident.
>
> You know if they had a witness who was prepared to tie one to the other—Kelleher's counsel interrupted with an objection, which the district court overruled.

Kelleher contends that the district court erred in denying a mistrial at this point. Not only was there no request for a mistrial, but the district court correctly overruled the objection. There was no evidence that Slack's heart condition had anything to do with the accident.

### G. Did the District Court Err in Denying Kelleher's Motion to Reduce the Judgment by the Amount of Slack's Medicare Benefits?

At trial, Slack offered evidence showing that her medical expenses totaled $83,894.33. Because she was a Medicare patient, her medical expenses were mandatorily reduced below that amount due to Medicare regulations and federal law. Kelleher filed a motion seeking to have the Medicare "writedowns" treated as a collateral source under Idaho Code § 6–1606. The district court denied the motion. Five months later we released our opinion in *Dyet v. McKinley*, 139 Idaho 526, 81 P.3d 1236 (2003), in which we held that such write-downs are to be treated as a collateral source. On appeal, Slack asks us to overrule *Dyet*, but we are not persuaded that it is incorrect. Therefore, the district court erred in denying Kelleher's motion to treat the write-downs as a collateral source. This case will have to be remanded for the district court to reduce the judgment by the appropriate amount.

## IV. CONCLUSION

The judgment of the district court is affirmed except for its treatment of the Medicare write-offs. This case is remanded with instructions to reduce the judgment by the amount that Slack's medical expenses were mandatorily reduced due to Medicare regulations and federal law. Because both parties have prevailed in part, we do not award costs on appeal.

Chief Justice SCHROEDER and Justices KIDWELL and BURDICK concur.

Justice TROUT, concurring in part and dissenting in part.

I concur in all parts of the Court's opinion with the exception of the holding in Part III

A and B, relating to whether evidence of an alternative route should have been admitted. I agree in principle with the holding in Part III A that evidence of a safe alternative route is relevant to the jury's determination of whether Kelleher breached a duty of due care by failing to select an available route which would have been safer under the circumstances presented to him at the time he was returning home on his tractor. However, unless the threshold determination is made that there is indeed a safe and available alternate route, the evidence is not relevant. The question remains in this case whether Kelleher's counsel properly objected to that evidence so as to preserve the issue for this Court's consideration on appeal.

As noted in the Court's opinion, there were extensive discussions between court and counsel before voir dire commenced, before opening statements were made and again on the second day of trial about whether evidence about the dirt road running alongside Highway 19 should be admitted. Kelleher's attorney's principal objection was that the evidence of another route was irrelevant. However, in objecting to evidence of the route coming in, Kelleher's attorney also said:

> But, your Honor, there is no foundation that this is a safer route. Obviously, it goes through parking lots and commercial areas. There's not foundation that it is permissible to be there. In fact, Simplot's manager is going to come to this court and say that's trespassing. That's my property. That's our property. And so the foundational elements of introducing this are not in existence, and it shouldn't be used, Your Honor, in addition to all the other arguments as to why we believe that this is inappropriate testimony. So along with everything else, there's inadequate foundation to testify that anybody can legally use this road other than Simplot personnel or Simplot invitees or licensees.

Thereafter, the trial court ruled as follows:

> All right. Well, as far as the—my ruling on this is going to be as follows. As far as the presentation of evidence concerning the choices that the plaintiff—or the defendant had available, *the court is going to permit testimony or evidence concerning this as one of the factors* because of—this alternate route, because the court believes that a reasonable jury, after viewing this videotape—or, I mean a jury could find that a reasonable person would have considered that. Certainly it's subject to argument because the defendant also has the opportunity to explain why a reasonably careful person would not use that. But it is one of the factors and one of the circumstances that the court believes is relevant to this issue of duty, of due care and duty to use ordinary care for the safety of the plaintiff and other persons on the roadway. (emphasis added)

Apparently the trial court thought that evidence of any other road was relevant and defendant's counsel could challenge whether it was an available alternative route through the presentation of his own witnesses; that is, that whether the route was legally available to Kelleher to use was simply one of the factors the jury should weigh in analyzing Kelleher's duty of due care. That is not correct. The jury should only be analyzing the other route if it is indeed an available safer route. The fact that there was another road running alongside Highway 19 is irrelevant unless it was available for Kelleher to use and thus, would be relevant to the issue of whether he exercised due care under the circumstances.

Kelleher's counsel could have done a better job of articulating his objection, could have continued to object and could have asked the court to clarify its ruling. I don't believe that's necessary under these circumstances. The attorney objected to the relevance and to the lack of foundation for admission of any evidence relating to the availability of the alternative route absent proof that it was available for public use. Kelleher's attorney obtained a ruling from the court—not just an indication that the objection was premature and should be renewed when testimony was presented. Indeed, immediately after her ruling, she inquired if Slack's counsel was going to move the admission of the videotape that morning or just the testimony about the route; a clear indication that she had ruled on the objections made and was anticipating

the evidence would be forthcoming. We have held that "if the motion *in limine* is made, and the trial court unqualifiedly rules on the admissibility or inadmissibility of the evidence prior to trial, no further objection at trial is required in order to preserve the issue for appeal." *St. v. Hester,* 114 Idaho 688, 700, 760 P.2d 27, 39 (1988). While counsel here did not characterize his objection as a "motion in limine", there is no doubt he was objecting prior to the admission of evidence on an issue which he believed should not be heard or considered by the jury. He obtained his ruling and I think the issue is preserved for appeal.

As indicated above, there was no testimony presented by Slack that this dirt road was open to the public and available for use, which was her burden. Equivocal statements about the fact that there was no gate and no "no trespassing" signs is not sufficient to submit to the jury to consider this an available safe route. I therefore believe this evidence was properly objected to and should not have been considered by the jury. I respectfully dissent from that portion of the Court's opinion.