# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41452-2013

DUANE R. MUELLER, )
             )   **Boise, January 2015 Term**
   **Plaintiff-Respondent,**    )
             )   **2015 Opinion No. 20**
v.             )
             )   **Filed: February 26, 2015**
CAROLYN HILL, an unmarried person; )
KEVIN M. THOMPSON and PHILOMENA )   **Stephen W. Kenyon, Clerk**
KEYS, husband and wife; NORTHWEST )
SHELTER SYSTEMS, LLC., a Montana )
corporation; JEFFREY T. BUCK d/b/a )
BUCK'S CONSTRUCTION; and BUCK'S )
CONSTRUCTION, LLC, an Idaho limited )
liability company, )
             )
   **Defendants-Appellants.**   )
             )

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Bonner County. Hon. Barbara A. Buchanan, District Judge.

The judgment of the district court is <u>affirmed</u> <u>in</u> <u>part</u> <u>and</u> <u>reversed</u> <u>in</u> <u>part</u>.

John A. Finney, Finney Finney & Finney PA, Sandpoint, argued for appellants.

Toby McLaughlin, Berg & McLaughlin Chtd., Sandpoint, argued for respondent.

---

EISMANN, Justice.

This is an appeal out of Bonner County from a judgment awarding damages for common law trespass and attorney fees for statutory trespass. We affirm the judgment except for $1,000 of the damages awarded and remand for the entry of an amended judgment.

## I.
## Factual Background.

Duane Mueller and his wife owned a 20-acre parcel of rural real property (Mueller Parcel) in Bonner County. They lived on another parcel located across the county road at the

northern end of the Mueller Parcel. The Mueller Parcel is generally rectangular in shape, with the north-south dimension being over twice as long as the east-west dimension. In 1995, Ray and Carol Thompson purchased an L-shaped, 32-acre parcel that adjoined the entire length of the eastern boundary of the Mueller Parcel. The arm of the "L" extended to the east. Beginning at its northern end, the common boundary between the two properties runs through a relatively flat, grassy stretch, up and along the side of a hill, and then through timbered land to its southern end.

In the late 1990's, Ray Thompson constructed a fence along a portion of what he contended was the common boundary. Mr. Mueller objected that the fence encroached onto his property. He and a friend located the survey pins marking the northern and southern ends of the common boundary and then used a compass, stakes, and flags to mark what Mr. Mueller believed to be the location of the boundary line. He showed the line to Ray Thompson, and he took his fence down and installed a barbed wire fence on the line marked by Mr. Mueller. The fence started at the northern end of the boundary line and ran about 600 feet to the south.

In approximately 2000, Ray Thompson asked Mr. Mueller for permission to bulldoze a swath about eight to ten feet wide from the southern end of the fence to the southern end of the common boundary. Mr. Mueller agreed that Mr. Thompson could do so, but he never agreed that the swath later bulldozed marked the common boundary.

On September 13, 2004, Carolyn Hill purchased the 32-acre parcel from the Thompsons, who are her parents. In 2005, she sold twenty acres, which would be the arm of the "L," to another couple, and in July 2008 that couple sold the parcel to Philomena Keys, who is married to Kevin Thompson, the son of Ray and Carol Thompson. The 12-acre parcel retained by Ms. Hill is herein called the "Hill Parcel," and the 20-acre parcel that was ultimately purchased by Philomena Keys is herein called the "Keys Parcel."

On August 25, 2008, Mr. Mueller and his wife were divorced, and she was awarded the Mueller Parcel in the divorce action. Pursuant to the divorce decree, he quitclaimed the parcel to her on September 6, 2008. She orally agreed that he could purchase the property for $120,000 within one year of the divorce and that he could remain in possession of and use the property while he was attempting to obtain financing. On July 17, 2009, he purchased the property from her by a warranty deed.

Because the Keys parcel did not front the county road that was along the northern boundary of the Hill Parcel, Ms. Hill permitted Philomena and Kevin to construct a power line

and driveway across her property. Kevin Thompson constructed a portion of the driveway on the swath previously bulldozed by his father along the boundary line between the Mueller and Hill parcels. He began work on the driveway in August 2008. Mr. Mueller became concerned when he saw truckloads of rock and dirt being dumped near the common boundary, and at his request Kevin Thompson agreed to have the boundary surveyed. The survey was completed in the fall of 2008, and the surveyor placed posts along the common boundary.

Also in the fall of 2008, Kevin hired a company to blast into the uphill slope and a construction company to perform bulldozer work on the driveway. The blasting work caused dirt, rocks, and debris to be deposited onto the Mueller Parcel, and it damaged some of the trees on that property. The bulldozer work lowered the grade of the driveway by cutting into the uphill slope, filling in the downhill slope, adding a substantial amount of fill, and increasing the width of the driveway. The construction caused a substantial amount of water runoff to be diverted onto the Mueller Parcel.

In the spring of 2009, Mr. Mueller had the boundary surveyed, and he and the surveyor placed posts and ran a string to mark the boundary line. Mr. Mueller also posted "No Trespassing" signs along the boundary. The survey showed that portions of the boundary were located east of the old fence erected by Ray Thompson in the swath he had bulldozed and that part of the fill added in constructing the driveway was on the Mueller Parcel.

On September 28, 2010, Mr. Mueller filed this action against Carolyn Hill, Kevin Thompson, Philomena Keys, and Northwest Shelter Systems, LLC (a company owned by Kevin Thompson and Philomena Keys with its principal place of business on the Keys Parcel), to recover damages for trespass. Mr. Mueller later amended his complaint to add as defendants the company that performed the blasting and its owner. They later settled with Mr. Mueller, and his claims against them were dismissed with prejudice.

During the summer of 2011, Kevin Thompson had caused cap rock to be installed on the portion of the driveway that was adjacent to the common boundary, replaced an existing culvert, and added a rock catch basin in order to address the problem of water runoff flowing onto the Mueller property. In an attempt to return the Mueller property to its pre-2008 condition, he also hired a company to remove material that had been dumped onto the Mueller property when building the roadway in 2008.

3

In March 2013, the matter was tried to the district court without a jury, and it awarded Mr. Mueller damages for trespass in the sum of $23,500.00, plus court costs and attorney fees in the sum of $55,164.40, for a total judgment of $78,664.40. The Defendants then timely appealed.

## II.
### Did the District Court Err in Holding that Mr. Mueller Had Standing to Bring this Lawsuit?

The Defendants contend that Mr. Mueller lacked standing to sue for trespass because he was not the owner of the Mueller Parcel when the trespass occurred in 2008. During the period from August 25, 2008, when the Mueller Parcel was awarded to Mr. Mueller's wife in their divorce action, until July 17, 2009, when he purchased the parcel from her, Mr. Mueller was not the owner of the Mueller Parcel. Because the blasting and roadwork occurred in the fall of 2008, the Defendants contend that Mr. Mueller did not have standing to recover damages for any trespass that occurred in 2008. They assert, "Both statutory trespass (Idaho Code § 6-202) and common law trespass require that the party seeking to recover for trespass must be 'the owner' of the real property." The district court correctly held that he had standing because he was in possession of the Mueller Parcel at the time of the trespass.

" 'When an issue of standing is raised, the focus is not on the merits of the issues raised, but upon the party who is seeking the relief.' Indeed, a party can have standing to bring an action, but then lose on the merits." *Bagley v. Thomason*, 149 Idaho 806, 808, 241 P.3d 979, 981 (2010) (citations omitted). "To satisfy the requirement of standing litigants must allege an injury in fact, a fairly traceable causal connection between the claimed injury and the challenged conduct, and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Bagley v. Thomason,* 149 Idaho 799, 802, 241 P.3d 972, 975 (2010).

Idaho recognizes two common-law actions for trespass—trespass *quare clausum fregit* and trespass on the case. *Steltz v. Morgan*, 16 Idaho 368, 372, 101 P. 1057, 1058 (1909). "The former was the remedy resorted to by one in the possession of real estate as against one who wrongfully and forcibly entered upon the premises. The latter was the remedy given to the owner of the fee for a trespass where the damage was peculiar to the land itself." *Id*. This Court in *Steltz* stated that "[t]he distinction between these two rights of action is very clearly

4

considered in *Casey v. Mason*, 8 Okl[a]. 665, 59 Pac. 252 [(1899)]." *Id.* That case explained that trespass *quare clausum fregit* is an injury to the possession of real estate, and to recover under that theory one must be in either actual or constructive possession of the real property at the time of the trespass. *Casey v. Mason,* 8 Okla. 665, 59 P. 252, 253 (1899). Trespass on the case is injury to the land itself, and to recover under that theory one must have legal title to the real estate, or a reversionary interest therein, at the time of the injury to the real property. *Id*. at 254.

At the time of the 2008 trespass, Mr. Mueller was in possession of the Mueller Parcel pursuant to an oral agreement with his ex-wife. Defendants contend that he was not entitled to recover for trespass because there was no written agreement between Mr. Mueller and his ex-wife granting him the right to possess the Mueller Parcel and because he did not have exclusive possession of the property since his ex-wife's right to possession was superior to his. We need not address the merits of those arguments because "[a]s against a mere tort-feasor, actual possession of land, under a claim of right, is sufficient to maintain trespass." *Hanson v. Seawell*, 35 Idaho 92, 94, 204 P. 660, 660 (1922). During the blasting and driveway construction in 2008, Mr. Mueller was in actual possession of the property under a claim of right.

Blasting rocks and debris onto the property, dumping dirt and rocks on it, and causing increased water runoff onto it while Mr. Mueller was in possession of it under a claim of right constituted a trespass *quare clausum fregit* because it was an injury to his possession of the land. *Mulchanock v. Whitehall Cement Mfg. Co*., 253 Pa. 262, 263, 98 A. 554, 554 (1916) (blasting rocks); *Scott v. Bay*, 3 Md. 431, 443 (1853) (blasting rocks); *Cooper v. Horn*, 248 Va. 417, 423, 448 S.E.2d 403, 406 (1994) ("Any physical entry upon the surface of the land constitutes such an invasion, whether the entry is 'a walking upon it, flooding it with water, casting objects upon it, or otherwise.'" (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 13, at 70 (5th ed. 1984)); 75 Am. Jur. 2d *Trespass* §§ 41, 43 (2007). While he was in possession of the property, Mr. Mueller grew and harvested hay on a portion of the Mueller Parcel. He contended that the blasting caused rocks to land in the hay field, which prevented him from harvesting a significant portion of the hay crop because the rocks would damage the equipment. He also contended that the increased water runoff caused by the construction of the driveway killed part of his crop. Recovery for damage to grasses and crops is recovery for injury to possession, not to the real property. *Hanson*, 35 Idaho at 94, 204 P. at 660.

5

Thus, Mr. Mueller claimed a traceable causal connection between the claimed injury and the challenged conduct, and there was a substantial likelihood that the judicial relief requested would prevent or redress the claimed injury. The district court did not err in holding that he had standing to bring his trespass claims.

## III.
### Was the District Court's Award of Damages Supported by Substantial and Competent Evidence?

The district court awarded Mr. Mueller damages in the amount $20,000 for removing material from the Mueller Parcel; $7,500 for reseeding the part of the Mueller Parcel where material will be removed; and $1,000 for removing a tree damaged by the blasting. The court deducted from the damages the sum of $5,000 that Mr. Mueller received from the company that did the blasting, so the net award of damages was $23,500.

The Defendants admit that "[t]he District Court had substantial evidence to rely upon that in 2008 some amount of fill material was placed across the later surveyed line and some amount of rock was blasted across the later surveyed line and that water runoff was increased." The Defendants contend that the district court failed to quantify the materials deposited on the Mueller Parcel in 2008 and failed to identify any specific injury or damage to the property that occurred in 2011. This contention is based upon the Defendants' argument that Mr. Mueller could not recover for the 2008 trespass because he was not then the owner of the Mueller Parcel. As stated above, the rocks and other material that was either blasted or dumped on the Mueller Parcel interfered with his possession of the property. The Defendants did not contend that the rocks and debris blasted onto the Mueller Parcel or the water runoff constituted a permanent injury to the land. Therefore, it did not matter whether the material was wrongfully deposited on the Mueller Parcel in 2008 or in 2011, or how much of the material wrongfully deposited in 2008 was not removed by the Defendants in 2011. "An actor's failure to remove a thing tortiously placed on the land constitutes a continuing trespass for the entire time during which it is on the land." 75 Am. Jur. 2d *Trespass* § 40 (2007). Thus, the issue at trial was the cost to remove the remaining material that had been wrongfully deposited onto the property by the Defendants, whether it was wrongfully deposited in 2008 or 2011.

"A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002). In applying that principle, the appellate court cannot reweigh the evidence, judge the credibility of the witnesses, or substitute its view of the facts for that of the trial court. *Argosy Trust ex rel. Andrews v. Wininger*, 141 Idaho 570, 572, 114 P.3d 128, 130 (2005). It is the responsibility of the trial court to judge the credibility of witnesses and weigh conflicting evidence. *Bream v. Benscoter*, 139 Idaho 364, 367, 79 P.3d 723, 726 (2003). The appellate court's role is simply to determine whether there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding that is challenged on appeal. *Miller v. Callear*, 140 Idaho 213, 216, 91 P.3d 1117, 1120 (2004).

"[E]vidence is sufficient if it proves the damages with reasonable certainty. 'Reasonable certainty requires neither absolute assurance nor mathematical exactitude; rather, the evidence need only be sufficient to remove the existence of damages from the realm of speculation.' " *Griffith v. Clear Lakes Trout Co., Inc*., 146 Idaho 613, 618, 200 P.3d 1162, 1167 (2009) (citation omitted). "Any claim of damages for prospective loss contains an element of uncertainty, but that fact is not fatal to recovery. 'The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.' " *Smith v. Mitton*, 140 Idaho 893, 900, 104 P.3d 367, 374 (2004) (citations omitted).

Mr. Mueller's expert testified that the cost to restore the Mueller Parcel by removing the material deposited on the land by the Defendants would be $20,000 and that the cost of reseeding that area would be $7,500. He stated that he had been an excavator for thirty-four years and owned his own excavation company. His company builds driveways, roads, house sites, small bridges, Forest Service roads, and logging roads, and he prepares the bids for those jobs. He testified that in preparing bids, he estimates the yardage to determine the number of dump truck loads and excavator time. He does so by looking at the property and considering the work he is being asked to do. He also stated that other excavators in the area generally follow the same methodology to bid their work. He walked the boundary line between the Mueller Parcel and the Hill Parcel, identified the boundary line by the string that had been installed to mark the boundary, looked at the material to be removed, and submitted his bid to restore the Mueller Parcel. The work would require both removing material with an excavator and with a shovel,

including removing material between the trees. He estimated the cost to reseed all of the area where he would remove material based upon the square yards.

The Defendants contend that the testimony is insufficient to support the award of damages because the expert "did no on-site measuring to determine any quantities of dirt to be removed" or the "specific seeding area" and admitted he was only "guessing" regarding his estimates. The expert submitted a bid based upon the manner in which he did so in the ordinary course of his business. When asked how he prepared a bid, he stated, "It's all calculated in yardage, time. Mainly just our guess." His "guess" was obviously an educated "guess" based upon his thirty-four years of experience. On cross examination, the expert was asked, "Until you actually do the work, you really don't know what it's gonna cost." He responded, "I'll stand behind the number."

The Defendants contend that Mr. Mueller did not have the expert actually remove the material prior to trial. He was not required to actually repair the damage caused by the Defendants before he could recover.

Finally, the Defendants contend that the estimates were "based upon re-contouring the entire slope rather than just removing any incidental materials added to the pre-existing fill slope." The expert submitted two bids: the first was for just removing the dirt and debris that the Defendants caused to be deposited on the Mueller Property and the second was for more elaborate work. The district court awarded damages based upon the first bid. In doing so, the court reasonably relied upon the expert's testimony in awarding damages for the removal of the remaining rocks and debris that had been blasted or dumped on the Mueller Property and reseeding the area from which the material was removed.

The district court also awarded $1,000 for removing a tree damaged by the blasting. The Defendants contend that there is insufficient evidence to support that award. When the blasting occurred, Mr. Mueller was not the owner of the real property. "[O]ne having no legal title to real estate, either in whole, or a reversionary interest therein, cannot be damaged by the destruction of buildings or trees, or any of the appurtenances thereon or there-unto belonging, because he has no interest in the land." *Casey*, 59 P. at 257; 75 Am. Jur. 2d *Trespass* § 19 (2007) (the removal of trees constitutes a permanent injury to the land).

Mr. Mueller contends that he was the equitable owner of the property based upon his ex-wife's oral agreement to sell him the property if he paid her $120,000 within one year of the

8

divorce. He relies upon the doctrine of equitable conversion, quoting from *Rush v. Anestos*, 104 Idaho 630, 634, 661 P.2d 1229, 1233 (1983), as follows: " 'An equitable conversion takes place when parties enter into a binding contract for the purchase and sale of realty. The purchaser is deemed the equitable owner thereof, and the seller is the owner of the purchase price.' " "[A]n equitable conversion takes place when a contract for the sale of real property becomes *binding* on the parties." *First Sec. Bank of Idaho, Nat'l Ass'n v. Rogers*, 91 Idaho 654, 657, 429 P.2d 386, 389 (1967). "Oral contracts for the sale of land are invalid under Idaho's Statute of Frauds." *Watson v. Watson*, 144 Idaho 214, 218, 159 P.3d 851, 855 (2007). Therefore, he would not have been considered the equitable owner of the Mueller Parcel at the time of the 2008 trespass. The district court erred in awarding him $1,000 for the damage to a tree.

## IV.
### Did the District Court Err in Finding that Mr. Mueller Was the Prevailing Party?

The district court found that Mr. Mueller was the prevailing party in this case. The Defendants contend that the district court erred in doing so. Rule 54(d)(1)(B) of the Idaho Rules of Civil Procedure states, "In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties." "The determination of who is a prevailing party is committed to the sound discretion of the trial court, and we will not disturb that determination absent an abuse of discretion." *Bream*, 139 Idaho at 368, 79 P.3d at 727. When we are asked to decide whether a trial court abused its discretion, this Court considers:

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Advanced Med. Diagnostics, LLC v. Imaging Ctr. of Idaho, LLC*, 154 Idaho 812, 814, 303 P.3d 171, 173 (2013).

In order to show that the district court erred, the Defendants must show that it abused its discretion in determining that Mr. Mueller was the prevailing party. In their opening brief, the Defendants do not mention the standard for showing an abuse of discretion, or even allege an abuse of discretion; they do not mention or discuss the district court's analysis in determining

that Mr. Mueller was the prevailing party; and they do not cite any authority showing that the district court's analysis was an abuse of discretion. Therefore, they have waived this issue on appeal. *Bettwieser v. New York Irrigation Dist.*, 154 Idaho 317, 326, 297 P.3d 1134, 1143 (2013); *Bolognese v. Forte*, 153 Idaho 857, 867, 292 P.3d 248, 258 (2012).

## V.
## Did the District Court Err in Awarding Attorney Fees?

Idaho Code section 6-202 sets forth a statutory cause of action for trespass.[1] In its memorandum decision, the district court found that neither the 2008 trespass nor the 2011 trespass was willful and intentional. With respect to the 2008 trespass, the court stated it was not willful and intentional due to the fact that "the common boundary line had not been surveyed" and "[t]here was no fence and no 'No Trespassing' signs." With respect to the 2011 trespass, the court stated it was not willful and intentional because Kevin Thompson was attempting to remediate some of the damage caused by the 2008 trespass. Even though the court found no statutory trespass, it awarded Mr. Mueller attorney fees pursuant to Idaho Code section 6-202. The Defendants moved for reconsideration, and, after a hearing, the district court amended its factual findings and analysis in its memorandum decision. It stated that the 2008 trespass was not willful and intentional, but "[t]he second trespass, in the summer of 2011, was clearly willful and intentional. The property line had been surveyed and the boundary line was marked with posts and a string line along with 'No Trespassing' signs."

---

[1] Idaho Code section 6-202 states:

> Any person who, without permission of the owner, or the owner's agent, willfully and intentionally enters upon the real property of another person which property is posted with "No Trespassing" signs or other notices of like meaning, spaced at intervals of not less than one (1) notice per six hundred sixty (660) feet along such real property; or who willfully and intentionally cuts down or carries off any wood or underwood, tree or timber, or girdles, or otherwise willfully and intentionally injures any tree or timber on the land of another person, or on the street or highway in front of any person's house, village, or city lot, or cultivated grounds; or on the commons or public grounds of or in any city or town, or on the street or highway in front thereof, without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor or fifty dollars ($50.00), plus a reasonable attorney's fee which shall be taxed as costs, in any civil action brought to enforce the terms of this act if the plaintiff prevails.

Idaho Code section 6-202A states:

> As used in section 6-202, Idaho Code, "enters" and "entry" mean going upon or over real property, either in person or by causing any object, substance or force to go upon or over real property.

The court also refused to reconsider its determination that Mr. Mueller was entitled to an award of attorney fees pursuant to Idaho Code section 6-202. It wrote, "The Court has found that the defendants willfully and intentionally entered upon the Mueller property at a time when it was posted with 'No Trespassing' signs, in violation of Idaho Code § 6-202." It held that "the statute provides that, in such instances, in addition to damages, the trespasser is liable for reasonable fees and costs. . . . Idaho Code § 6-202 does not require a finding of any particular amount of damages before attorney's fees can be awarded."

The Defendants do not challenge the amount of attorney fees awarded by the district court or that the attorney fees were awarded against all of the Defendants. Their only argument in their opening brief is that the district court did not find that the trespass was willful and intentional, which is required to find a statutory trespass. They state:

> Also, the District Court found and concluded that the trespass that occurred was at common law and not with the requisite willfulness and intention in the face of the required no trespassing signs. Since the 2008 conduct was at most common law trespass, there is no basis for an award of attorney fees pursuant to Idaho Code § 6-202, which is statutory trespass. The findings and conclusions were that the trespass was not willful and intentional. As such, the Court cannot rely upon Idaho Code § 6-202 to award attorney fees as costs pursuant to the statute and the cases cited above regarding trespass.

The statute and cases that the Defendants had previously cited in connection with their argument that there was no statutory trespass in 2011 simply stated that attorney fees could not be awarded under Idaho Code section 6-202 unless the trespass was willful and intentional.[2] The Defendants do not address the district court's finding on reconsideration that the 2011 trespass was willful and intentional. In their reply brief, the Defendants raise additional issues regarding the district court's award of attorney fees, but this Court will not address an issue raised only in the reply brief. *Hernandez v. State*, 127 Idaho 685, 687, 905 P.2d 86, 88 (1995); *State v. Killinger*, 126 Idaho 737, 740, 890 P.2d 323, 326 (1995); *State v. Raudebaugh*, 124 Idaho 758,

---

[2] Earlier in their opening brief, they had argued as follows:

> As set forth in *Weitz v. Green* [148 Idaho 851, 230 P.3d 743 (2010)] and *Bumgarner v. Bumgarner* [124 Idaho 629, 862 P.2d 321 (Ct. App. 1993)] for the statutory provisions of Idaho Code § 6-202 to apply (as to a finding of trespass, an award of damages, and an award of attorney fees) the act must be willful and intentional and upon property which is posted with "No Trespassing" signs. As to the 2008 conduct there are no such findings and no evidence to support such findings. As such, the Court cannot rely upon Idaho Code § 6-202 to award damages (or attorney fees) for trespass.

763, 864 P.2d 596, 601 (1993). The Defendants have not shown that the district court erred in its award of attorney fees.

## VI.
### Did the District Court Err in Awarding Damages Against All Defendants?

The district court found that "because the defendants hired [the blasting company] to perform blasting work, which is work involving a special danger to others, the defendants are subject to liability for the physical harm caused by the work." Defendants contend that any judgment for damages should be against only Kevin Thompson because "HILL was not involved in any of the road work whatsoever. Also, there was no evidence of any conduct of Philomena Keys or the dissolved Montana entity."

In their counterclaim, the Defendants alleged, "In 2008 and 2009 the Defendants Hill, Thompson, and Keys commenced repair work on the existing Subject Road." Mr. Mueller did not deny this allegation, so it was deemed admitted. I.R.C.P. 8(d). In his brief on appeal, Mr. Mueller pointed to that allegation and stated that Ms. Hill's deposition, which was admitted into evidence, shows that "Thompson had Hill's permission to perform the road work on Hill's property, which includes both blasting and excavating" and that "she admitted that she was aware of the road work, and was witness to the blasting." The deposition is not in the record on appeal, and the Defendants do not dispute Mr. Mueller's characterization of what it says. "Where an incomplete record is presented to this Court, the missing portions of that record are to be presumed to support the action of the trial court." *Rutter v. McLaughlin*, 101 Idaho 292, 293, 612 P.2d 135, 136 (1980). The checks that paid for the blasting and construction were drawn on the account of Northwest Shelter Systems, LLC. The Defendants have not shown that the district court erred in finding them all liable for the 2008 trespass. The court did not award any damages for the 2011 trespass.

## VII.
### Are the Defendants Entitled to an Award of Attorney Fees on Appeal?

The Defendants seek an award of attorney fees on appeal pursuant to Idaho Code section 12-121. "In order to be eligible for an award of attorney fees under Idaho Code section 12-121, the party must be the prevailing party on appeal." *Armand v. Opportunity Mgmt. Co., Inc*., 155

12

Idaho 592, 602, 315 P.3d 245, 255 (2013). The Defendants are not the prevailing party on appeal.

## VIII.
### Is Mr. Mueller Entitled to an Award of Attorney Fees on Appeal?

Mr. Mueller seeks an award of attorney fees on appeal pursuant to Idaho Code sections 6-202 and/or 12-121. We sustained an award of attorney fees in the trial court pursuant to Idaho Code section 6-202. That statute also permits an award of attorney fees on appeal. *Miller*, 140 Idaho at 218-19, 91 P.3d at 1122-23. Where the district court's award of attorney fees pursuant to section 6-202 was challenged on appeal and upheld, we will also award a prevailing plaintiff attorney fees on appeal pursuant to that statute. *Lettunich v. Lettunich*, 145 Idaho 746, 752, 185 P.3d 258, 264 (2008); *Lake v. Purnell*, 143 Idaho 818, 821, 153 P.3d 1164, 1167 (2007). However, that award will be only against Kevin Thompson because the district court awarded attorney fees based upon the 2011 trespass and the record indicates that only he was involved in that trespass. We will not award attorney fees against the remaining Defendants pursuant to Idaho Code section 12-121 because we do not find that the appeal was brought frivolously, unreasonably, or without foundation. No distinction was made below by the parties or the district court between the two types of common-law trespass.

## IX.
### Conclusion.

The award of damages below must be reduced by $1,000. With that modification, we affirm the judgment of the district court, including its award of court costs and attorney fees. We award respondent costs on appeal against all appellants and attorney fees on appeal against Kevin Thompson.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**