# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43620-2015

| | | |
|---|---|---|
| R. GORDON SCHMIDT, | ) | |
| | ) | **Boise, December 2016 Term** |
| Plaintiff-Appellant, | ) | |
| | ) | **2016 Opinion No. 148** |
| v. | ) | |
| | ) | **Filed: December 21, 2016** |
| TIM HUSTON, | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| Defendant-Respondent. | ) | |
| | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. Hon. Richard D. Greenwood, District Judge and Hon. D. Duff McKee, Senior District Judge.

The judgment of the district court is <u>affirmed</u>.

Anthony M. Shallat, Angstman Johnson, Boise, argued for appellant.

Michelle R. Points, Points Law, PLLC, Boise, argued for respondent.

---

EISMANN, Justice.

This is an appeal out of Ada County from a judgment denying a claim for contribution on equitable principles in an action by one co-guarantor against another co-guarantor. One of two independent grounds for the district court's decision was not challenged on appeal, and we therefore affirm the judgment of the district court without addressing either ground.

## I.

## Factual Background.

R. Gordon Schmidt and Tim Huston were two of the members of TRG Leasing, LLC. The company obtained a bank loan in the sum of $26,000, and Mr. Schmidt and Mr. Huston each executed a guaranty of the loan. Mr. Schmidt ultimately paid the loan and brought this action against Mr. Huston and Robin Navert, another guarantor, to require them to pay their share. He settled with Ms. Navert for $5,000, and his claim against Mr. Huston was tried to the district

court. It ruled that under the facts it was inequitable to require Mr. Huston to pay any sum to Mr. Schmidt, and he timely appealed.

The district court's findings of fact were as follows:

1. TRG Leasing, LLC was formed in July of 2007, with Schmidt, Robin Navert and Huston as members; Richard Navert was the non-member manager.

2. In October of 2007, TRG borrowed $26,000 from Bank of the West. The bank apparently took an all-inclusive financing statement on all tangible assets of TRG, plus obtained separate personal guaranties from Schmidt, Huston, Robin Navert and RNR Enterprises.

3. Richard Navert was the non-member manager of TRG. He was also the CEO of RNR. The Naverts (Richard and Robin) owned approximately 86% of RNR; Schmidt owned approximately 10%; and Gary Navert, presumably Richard Navert's son, owned approximately 4%. There is no record that Huston was a stockholder in RNR.

4. Huston was an employee of RNR, managing some of its operations out of a location in Denver, Colorado. Navert ran the company from its headquarters in Boise, Idaho. Navert and Huston met from time to time in Denver on RNR business; Navert was often or frequently accompanied on these meetings by Schmidt.

5. In 2011, Huston was fired by Richard Navert and Gordon Schmidt. Huston understood this to mean that he had been terminated from any interest in or with RNR and TRG. Huston left Denver for the Midwest, and had no contact with Richard Navert, Robin Navert or Gordon Schmidt until after this lawsuit was started in 2014.

6. Huston understood or was led to believe that the bank loan was being taken care of as agreed by Navert and Schmidt.

7. From 2011 through 2014, the Naverts and Schmidt had sole control of RNR and TRG. By this I find that Richard Navert was in operating control and Schmidt knew or should have known what Navert was doing. The companies were run in a manner to not make lease payments from RNR to TRG, not make bank payments from TRG to Bank of the West and eventually to sell the equipment owned by TRG and not pay the proceeds to Bank of the West.

8. Huston was unaware of any of these operating decisions by Navert and Schmidt. Huston believed that the bank was being or had been fully paid.

9. Upon circumstantial evidence and the direct evidence noted, Schmidt was aware that Navert was not making the lease payments from RNR to TRG, was not making payments to the bank from TRG, and upon sale of the assets of TRG, was not remitting the proceeds of sale of TRG's assets to the bank.

10. Schmidt was a member of the LLC and a stockholder of the corporation, and was in a position to take timely action upon the defaults noted.

11. Schmidt's failure to act with respect to Navert's apparent defalcations to the bank materially prejudiced Huston's interest in the matter.

12. Huston was never notified that the bank was calling the loan.

13. Richard Navert, individually but as a non-member, was the manager of the TRG. His failure to account for the remaining assets of the entity,

2

including his failure to account for and pay over to the bank the proceeds of sale of two of the assets, or to account for the whereabouts of the third asset, constitute causes of action available to the holder of the note in tracing the collateral and/or to the remaining members of the LLC for misappropriation of company property – which in both cases would be Schmidt.

14. Schmidt released Richard Navert individually from any liability for all such causes of action as an incident of his settlement with Robin Navert.

15. The release seriously impairs the rights of any other party to attempt to pursue Navert. If Navert had been pursued, the value of the unaccounted assets may well have been sufficient to satisfy the entire bank debt.

16. By Schmidt's action in prejudicing the interests of the co-surety in this matter, the co-surety is discharged from any liability to Schmidt on his claim.

The district court ruled in favor of Mr. Huston on two separate grounds. The first ground was based upon the sale of TRG Leasing's assets that were security for the bank loan without remitting the proceeds from such sales to the bank. The court stated as a conclusion of law that

it would be unjust or inequitable to allow Schmidt to recover from Huston when Schmidt knew of and apparently acquiesced or was a party to the actions of Navert in operating the companies in a manner to fail to carry out the lease obligations between RNR and TRG and to fail to carry out the concomitant loan obligations between TRG and the bank, and in disposing of the assets of TRG without applying the proceeds to the bank, knowing that Huston was expecting that these obligations would be fulfilled and knowing that Huston had no reasonable way of discovering the truth.

The second ground was based upon Mr. Schmidt releasing Richard Navert from any liability in connection with his settlement with Robin Navert where TRG Leasing LLC may have had a cause of action against Mr. Navert for breaching his fiduciary duty to the company. The court stated as a conclusion of law:

Further, the release of Richard Navert individually by Schmidt while standing in the capacity as the holder of note and collateral security interests attached, and further while standing in his capacity as the sole remaining member of TRG Leasing LLC, prejudiced the rights and interests of the co-surety to bring action against Navert for misappropriation, which liability might have proved to be fiduciary and non-dischargeable. Since the actions of Navert in failing [to] manage the companies in a manner to pay the note and in failing to account for the proceeds of sale of the collateral securing the note may have constituted breaches of contract and breaches of fiduciary duty, and since the value of the non-accounted for assets appear on a book value basis to have been sufficient to retire the entire debt, which value is corroborated the reported sale price from the sale of one of the assets, the prejudice to the co-sureties by the actions of Schmidt in failing to pursue Richard Navert individually, but instead in releasing him, is

3

material.  Under the facts of this case, the co-surety is discharged from the claim of Schmidt entirely.

## II.

**Did the District Court Err in Holding that It Would Be Inequitable to Require Mr. Huston To Pay Any Sum to Mr. Schmidt?**

Mr. Schmidt does not challenge any of the district court's factual findings on appeal. Rather, he contends that the district court erred in basing its decision on the equitable doctrine of unclean hands.  He lists as an issue on appeal, "Did the Trial Court err in concluding that Appellant could not recover from Respondent due to 'unclean hands'?"

This action was one in equity.  Mr. Schmidt brought this action seeking contribution from Robin Navert and Mr. Huston, although he settled with Ms. Navert and only his claim against Mr. Huston was litigated.  Messrs. Schmidt and Huston each signed a separate guaranty, and there was no contractual provision regarding contribution.  Therefore, Mr. Schmidt's claim for contribution was equitable.[1]  "Contribution is a remedy deeply rooted in the principles of equity, fair play and justice." *Masters v. State*, 105 Idaho 197, 200, 668 P.2d 73, 76 (1983).

During opening statements, Mr. Schmidt's counsel stated that the case was "governed by the parameters of equity, and the parameters of equity would limit my client to having paid his fair share."  In her opening statement, Mr. Huston's counsel stated, "There is a lot of facts that we are going to be introducing that go to the core issue of equity, and at the end of day, we are confident that your court will allocate the number of zero to Mr. Huston based on those facts." The issue of what evidence was relevant in determining what was equitable arose several times regarding the admissibility of evidence.  Mr. Schmidt's counsel contended that the attorney fees incurred by Mr. Schmidt to reach the settlement with Robin Navert should be deducted from the settlement received from her "in order for a court of equity to determine the amount of contribution [it] needs to take into account the net amount of the settlement that Mr. Schmidt recovered."

---

[1] Mr. Schmidt also asserted that his claim was based upon equitable subrogation to the extent that he was recovering what Mr. Huston in fairness should pay him.  Characterizing this as subrogation rather than contribution would not change the result.  "The doctrine of subrogation is not administered as a legal right, but the principle is applied to subserve the ends of justice and to do equity." *Houghtelin v. Diehl*, 47 Idaho 636, 640, 277 P. 699, 700 (1929).

Later on, a dispute arose regarding the admissibility of bank statements of TRG Leasing, LLC, offered by Mr. Huston's counsel. She argued in support of their relevance that "in a case of equity, the court can take into account who received the benefit from the debt, where the—that the co-guarantors were on, whether the party being sought to contribute received any consideration for that loan." During the colloquy among the district court and both counsel, the court commented that where Mr. Schmidt's claim is an equitable one, the equities could "extend to the manner in which the debt was used, and who benefitted from it, and where did the money go, and who knew what was going on, and what the participants were [sic]."

At that point, Mr. Schmidt's counsel argued that Mr. Huston had not pled any affirmative defenses. In response, Mr. Huston's counsel stated: "I am just trying to enter evidence for the court to review with respect to allocating the pie, the equities in the case. That's it." The district court then overruled the objection to the records. During her cross-examination of Mr. Navert, Mr. Huston's counsel questioned him regarding the income of the company, the purchase of equipment with the bank loan, the bank's security interest in the equipment, the later sale of the equipment, and his inability to state what happened to the proceeds of the sale, other than that they were not paid to the bank.

During their closing arguments, both sides argued the equities of the situation, although they disagreed as to how the equities should be viewed. Mr. Schmidt's counsel contended that the only equity is requiring the solvent coguarantors to share the debt equally, while Mr. Huston's counsel contended that all of the equities could be considered, which would result in her client not paying anything. The district court concluded that it would be inequitable for Mr. Schmidt to recover any sum against Mr. Huston.

On appeal, Mr. Schmidt concedes that "[c]ertain circumstances may warrant a court of equity to redistribute the shared liability of a debt," but such circumstances must be pled as an affirmative defense, and Mr. Huston "never asserted an affirmative defense of unclean hands in his answer." The maxim of unclean hands need not be pled in an equitable proceeding. "A party may invoke the maxim of unclean hands without pleading it. Moreover, in order that the suit may be dismissed, the defendant need not have invoked the clean-hands maxim; the court may act sua sponte or of its own motion." 27A Am. Jur. 2d *Equity* § 106 (2008). "Equity has always regarded itself free to apply or refuse to apply the maxim in a particular case, depending upon the consequences and a due regard for other considerations involved." *Howay v. Howay*, 74 Idaho

5

492, 497, 264 P.2d 691, 694 (1953). When one party is seeking recovery in equity, "the trial court is vested with discretion in determining the 'equities' between the parties." *Griggs v. Safeco Ins. Co. of Am.*, 103 Idaho 790, 792, 654 P.2d 378, 380 (1982). "Under the equitable doctrine of 'unclean hands,' the Court has the discretion to evaluate the relative conduct of both parties and to determine whether the party seeking equitable relief should in the light of all the circumstances be precluded from such relief." *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 209, 61 P.3d 557, 566 (2002). "A trial court's decision to afford relief based on the unclean hands doctrine, or to reject its application, will not be overturned on appeal absent a demonstration that the lower court abused its discretion." *Sword v. Sweet*, 140 Idaho 242, 251, 92 P.3d 492, 501 (2004).

Mr. Schmidt also asserts that the district court "allowed Respondent's counsel to present irrelevant testimony on non-disclosed evidence over Appellant counsel's objections" and that "[t]his non-disclosure prejudiced Appellant's substantial rights." This is not sufficient to raise an issue on appeal. Mr. Schmidt does not address the basis for the district court's ruling. We "review issues of whether to admit or exclude evidence under an abuse of discretion standard." *Slack v. Kelleher*, 140 Idaho 916, 924, 104 P.3d 958, 966 (2004), including when it is asserted that the evidence was not disclosed timely, *Cummings v. Stephens*, 157 Idaho 348, 361, 336 P.3d 281, 294 (2014).

To show that the district court incorrectly weighed the equities and erred in admitting evidence, Mr. Schmidt must show that the court abused its discretion. "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Reed v. Reed,* 137 Idaho 53, 57, 44 P.3d 1108, 1112 (2002). In his opening brief, Mr. Schmidt does not state the basis for the court's rulings, does not state the standard of review and, therefore, does not present any argument and authority showing how the court abused its discretion. Therefore, he has waived those issues on appeal. *Mueller v. Hill*, 158 Idaho 208, 215–16, 345 P.3d 998, 1005–06 (2015).

More significantly, as shown above the district court based its ruling on two alternative grounds. Although Mr. Schmidt argues that we should reweigh the equities as to the first ground addressed by the district court, he does not even mention the second ground. "Where a lower

6

court makes a ruling based on two alternative grounds and only one of those grounds is challenged on appeal, the appellate court must affirm on the uncontested basis." *State v. Grazian,* 144 Idaho 510, 517–18, 164 P.3d 790, 797–98 (2007). Therefore, we need not address the merits of either ground on appeal. The judgment of the district court must be affirmed.

## III.

### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Mr. Schmidt seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-120(3) on the ground that this was an action to recover in a commercial transaction. A party who has not prevailed on appeal is not entitled to an award of attorney fees under this statute. *Cummings v. Stephens*, 157 Idaho 348, 367, 336 P.3d 281, 300 (2014).

Mr. Huston also seeks an award of attorney fees on appeal pursuant to that statute. His entire argument for an award of attorney fees is, "Mr. Huston is entitled to an award of attorney fees and cost on appeal pursuant to Idaho Code § 12-120(3) and Idaho Rule of Civil Procedure 54." "[A] general assertion to an award of attorney fees under Idaho Code section 12–120(3) is insufficient to request attorney fees on appeal, where the specific portion of the statute relied upon is not identified and, if necessary, supported by argument as to why it is applicable." *Renshaw v. Mortgage Elec. Registration Sys., Inc.*, 155 Idaho 656, 659, 315 P.3d 844, 847 (2013). Therefore, Mr. Huston is not entitled to an award of attorney fees on appeal.

## IV.

### Conclusion.

We affirm the judgment of the district court, and we award Respondent costs, but not attorney fees, on appeal.

Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**